Staples, J.
The appellants’ first exception is to the charge of interest upon a debt lost by the negligence of the executors. It appears that the bond evidencing this debt was executed by Hansbrough and Bell in 1821. Upon the death of the testator in 1825, it passed into the hands of the executors as assets of the estate. Although the bond was then perfectly good, and so continued until the year 1839, the executors never made the slightest effort to collect it. Upon this state of facts the Circuit court rendered a decree against their representatives for the principal of the debt, with interest thereon from the year 1821, the period of payment, to the year 1839, when it is claimed the debt was finally lost by the insolvency of the surviving obligor.
The exception taken in the court below, to the report of the commissioner, brings before us the question of the correctness of the decree in this particular.
The appellants do not deny the liability of the executors for the principal of the bond; but they insist they are not chargeable with interest, upon the ground that interest being simply in the nature of damages awarded for the detention of the debt, it cannot be known whether the executors, had they sued, would have succeeded in the recovery of any portion of it.
The question must be determined without reference to the provisions of the 6th section, chap. 132, Code of 1849; as the entire transaction oceui’red before that section was enacted. Independently of this statute it must be conceded that in Virginia executors and other fiduciaries are not held liable for interest upon debts lost *383 by their negligence or other misconduct. See Rootes v. Stone, 2 Leigh, 706; Webb v. Colston, never reported; Report of Revisors, 1848-9.
The ground of this exception, as stated by Judge Green in Webb v. Colston, is, that the charge upon the fiduciary of the amount of the debt lost by his default is in1 the nature of damages assessed for a failure to do his duty; which he could not know that he would be liable to pay until so adjudged by a court of justice; and upon general principles he ought not to pay damages for the delay to pay damages. Bow it will be observed, that the reasoning of Judge Green goes to the extent of affirming merely that the executor himself will not be held to pay interest upon the amount with which he is chargeable. It does not affirm that he is not liable for a failure to collect the interest as well as the principal, when he might have done so by the exercise of due diligence. It no where asserts that when a bond given to the testal or passes into the hands of the executor, with constantly accruing interest, and the debt is finally lost by the mismanagement of the executor, that his liability does not extend as well to the interest as the principal. This precise proposition has not beeu touched by any Virginia ease that I have seen. It must, therefore, be regarded as an open question. Its decision depends upon a few very familiar principles of law. If the obligation is due on demand, it is evidence of a present debt payable insianter; and the writ isa demand which entitles the plaintiff to the penalty. The interest is allowed, not because the penalty is forfeited, but because the debt was from the beginning due and payable. Payne v. Britton, 6 Rand., 104; Robinson v. Bland, 2 Burr. R., 1071, 1086.
The same rule applies to obligations for the payment of money at a given day. In the absence of au express *384 contract they always bear interest from the day appointed! for the payment. This is the rule in Virginia certainly,. whatever it may be in England. It does not matter whether we regard interest as damages given for the detention of the debt, or as a compensation for the use of the money. In the class of contracts just mentioned it is allowed by the court as the judgment of the law. It is in fact a legal incident of the debt, and the right to it. is founded on the presumed intention of the parties.
It is true that the debtor may sometimes, under peculiar circumstances, avoid the payment of interest; but these are matters of defence, the burden of which is upon him in all cases. They are offered to show that the obligation to pay the interest has been discharged, and not that it did not originally exist. If no valid ground of defence is shown the judgment is as certainly rendered, for the interest as for the principal, in contracts of the-character just mentioned it is apparent, therefore, that interest is not given as damages at the discretion of the-court or jury, but as an incident of the debt which the-court has no discretion to refuse.
The bond executed by Hansbrough and Bell was payable on demand, and is therefore directly within the influence of these principles. But this is not all. The instrument is in the nature of a penal bill or obligation. The rule at common law is well settled, that when the-debt is secured by a penalty, if the condition is not complied with by a payment at the day, the penalty becomes-the debt, and neither tender nor payment after the day-will relieve the forfeiture.
The statute, however, provides that judgment shall be-entered for the penalty, to be discharged by the payment, of the principal and the interest due thereon, and the-costs of suit. Code of 1860, chap. 177, § 16. The object of this provision is to give the debtor relief in the- *385 common law courts upon the same terms as is afforded by courts of equity. In neither court can he be relieved from the penalty except upon the terms of paying both principal and interest. In these cases the interest is treated as part of the debt. Waller v. Long, 6 Munf. 71, 79; Moore v. Fenwick, Va. R. 214; Bonafous v. Rybbot, 3 Burr R. 1373.
If this view be correct, the interest upon the bond of Hansbrough and Bell must be regarded as a part of that debt. Had the executor brought suit thereon, judgment would have been entered for the penalty, to be discharged only upon payment of principal and the interest accrued to the date of the judgment, unless, indeed, the debtor had some valid defence; of which there is not the slightest pretence. & •
As before stated, the debt was lost in 1839- Down to that period the bond was an available security in the hands of the executor. It was assets of the estate until that time. Indeed the executors can only escape responsibility for full interest to the date of the decree by showing the loss of the debt.. As that loss did not occur till 1839, that period must .fix the date and measure of their liability.
The rule of law which exempts a fiduciary from the payment of interest upon a debt lost through his default, is a hard one, and has been remedied by statute. Neither sound policy, nor any well-settled principle, re- • quire that the courts shall extend this exception to interest which was as easily collectable as the principal.
It is supposed, however, that this is in conflict with Rootes v. Stone. A copy of the decree of this court in that case has been furnished by the counsel for the appjellee. This decree charges the attorney with the debts lost by his negligence. But we have no means of ascertaining what these debts were. It may be that no *386 interest had accrued upon them, or that by the form of the contract or the nature.of the debt, the creditor was entitled to interest only from the date of the verdict of a jury. Upon these points the report of the case in 2 Leigh, 706, furnishes no information. Indeed that report is too meagre and obscure to render the decision a conclusive authority upon this court, in determining the questions involved in the present case.
On the other hand, the ease of Holcomb v. Holcomb’s ex’ors, 3 Stockt. R. 281; Stiles v. Grey, 16 Sim. 229, 1 McN. & G. 422; and Powell v. Evans, 6 Ves. R. 839, are strong authorities for the proposition, that in charging an executor or other fiduciary with debts-lost by his negligence, the accrued interest thereon will be regarded as a part of the debt, and the executor will be held liable for it whenever it appears that such interest might have been collected by the exercise of due diligence. This view, I think, is substantially sustained by the reasoning of Judge Green in Webb v. Colston, a case decided by this court, but never reported. Certainly there is nothing in that opinion in direct conflict with the conclusions reached in the present case.
Upon the whole, I am satisfied there is no error in the decree of the Circuit court, in holding the estate of the executor responsible for one-half of the principal of the bond of Hansbrough and Bell, and interest thereon, which had accrued up to 1839. After that year-there is no charge of interest upon this debt; and in this respect the decree is correct.
The second and fifth exceptions to the commissioner’s report embrace substantially the same matter; and that is the refusal of the commissioner, sustained by the Circuit judge, to allow the executor commissions upon his receipts. The correctness of this decision depends upon the construction to be given to the act of February 16, *387 1825, found at page 217, Supplement to the Revised Code.
By the 8th section of this' act it is made the duty of the fiduciary not merely to cause his accounts to be settled and adjusted, but also to return them to the proper •court, or to see that the commissioner returns them in due time. It will be seen that this enactment is very different from the provisions of the present law upon the ■same subject. The object, no doubt, was, that parties interested might, by a simple reference to the records of the court, ascertain the condition of the assets, the transactions of the fiduciary and the nature and extent of his liabilities. As the commissioners were appointed, on motion of the' fiduciary, and generally persons of his selection, it was made his duty to return the settlement to the proper court, or to see that the commissioners returned them. If the commissioners failed in their duty in any respect, the remedy was by application to the •court to compel them to complete and return the accounts, orto appoint othei’s, who would perform that duty. At all events, the failure to return the accounts within "the prescribed time was an absolute forfeiture of the commission.
In the present case the returns were not made for several years after the period fixed by law; and however hard it may be upon the estate of the executor, the court has no alternative but to enforce the plain mandates of the statute.
The appellants’ third exception is to the charge of interest upon the aggregate amount of principal and interest reported against the executor as of the 7th October 1851, the period fixed by the commissioner for •closing the executorial accounts.
It has been repeatedly held by this court that so soon ss the purposes of the administration are accomplished *388 for the payment of debts against the estate, the executorial accounts should be closed. The balances then found in the hands of the personal representative should be charged against him as borrowed, and the accounts with the legatees settled upon the principles applicable to creditor and debtor. Whether the personal representative shall be charged with interest upon the aggregate of principle and interest thus found against him, depends upon the facts and circumstances of each case. This court has never undertaken to lay down any general rule upon the subject; and in the nature of things it is not expedient or advisable to do so. It is unnecessary, therefore, to review the cases bearing upon this subject, as no certain general principles can be deduced from them. It is very clear, however, that this court has not been favorably inclined to the charge of compound interest against personal representatives, except under very peculiar circumstances.
In the present case there is nothing to justify the charge of compound interest against the executors. On the contrary, there is much to repel it. The estate was involved in litigation down to, and even after, the institution of this suit. The complainant, in his amended bill, expresses the apprehension that the estate was not then in a condition for a final settlement and distribution. Although the bill was filed in 1849, so numerous were the parties, so difficult was it to ascertain their names and places of residence, that the cause could not be matured, and the accounts taken, until the year 1860. The commissioner realizing these difficulties, did not undertake to bring the executorial transactions to a close until more than two years after the inception of the proceedings. These facts tend strongly to show that the executors were not in any such default, with regard to the assets in their hands, as to warrant the heavy charge *389 of compound interest allowed in this case. As before stated, the commissioner closes the executorial accounts on the 7th of October, 1851; and he reports a balance on that day of eight thousand seven hundred and twenty-one dollars and sixty-eight cents, principal, and ten thousand seven hundred and thirty-one dollars and fifty-four cents interest. Upon these two sums aggregated, the executors are charged with interest from the 17th of October, 1851, by the decree of the Circuit court. This is plainly erroneous. The executors ought to have been charged with interest upon the reported balances found against them only from the date of the decree.
The fourth exception is to the charge against the executors of the sum of one thousand and fourteen dollars and 90 cents, on account of a debt due to the estate of Dr.’W'm. Shepherd, from Jas. Shepherd. This exception involves a question of evidence merely; and I shall content myself with simply saying that this charge is fully sustained by the proofs in the cause. It is difficult to see how any other conclusion could have been arrived at, than that reached by the commissioner and the Circuit Judge.
The sixth and last exception is to the action of the commissioner in reopening the exparte settlements in the County court, without any particular surcharge and falsification averred in the bill. The rule that administration accounts settled exparte, returned and recorded in the proper court, are to be taken as prima facie correct; liable only to be surcharged and falsified by proper averments, has received the sanction of this court in numerous cases. The inconvenience of the rule has been often felt, and in some few instances exceptions and modifications have been allowed when necessary to attain the justice of the case.
The case of Shugart's adm'r v. Thompson, 10 Leigh, 443, is a familiar illustration. There the answer denied *390 all the allegations of the bill intended to impeach the exparte settlements: it was not therefore proper to send the cause to account in the absence of evidence to sustain these allegations. Nevertheless an order of account was made, and the parties proceeded with their proofs before the commissioner.
The facts there established did not sustain the specific objections urged in the bill to the settled accounts, but they showed other grounds for surcharging the settlement. Judge Stanard said, the court might have required the plaintiff to amend his bill by inserting the further matters of surcharge and falsification, so as to afford defendants the benefit of an explanation and defence by way of answer;' or dispensing with that circuitous and formal proceeding, the court might have permitted the commissioner to proceed with the investigation in like manner as if the matters had been noticed in the bill. If the defendant should object he was taken by surprise, the court should give him time to combat the new charges. If he urged his privilege of defending himself by answer,' that privilege might be secured to him by allowing him to file his affidavit, and giving it all the effect of an answer.
In the case before us the exparie settlements made in the County court were erroneous upon their face in bringing charges against the legatees into the executorial accounts, and in allowing the executors commissions upon their receipts. It is also to be observed that these settlements did not profess to he final, or to embrace all the transactions of the executors. The court-, therefore,, very properly referred the accounts to one of its commissioners to settle and adjust. In the progress of the investigation it was discovered that the executors had omitted to charge themselves with various debts lost by their negligence, and with debts due by one of them to *391 the testator. With the exception of these omitted items, the commissioner obtained the principal material for his account from the exparte settlements. The only important change in the settlements consisted in the addition of the omitted debts, and in separating the administrator’s accounts proper from those of the legatees. The defendants did not complain of any surprise. They did not insist upon any specifications in writing. They did not claim the benefit of an explanation by way of affidavit or answer. The fullest and most ample investigation .was had; and it is very clear that no injustice has been done in reforming the exparte settlements, and in making the additional charges. Under all these circumstances it will be productive only of expense, delay and trouble to send the cause back for the plaintiff to go through 'with the useless formality of amending his bill by inserting matters already investigated before a commissioner, and in respect to which the defendants have not proposed to make any defence or explanation other than is already made. Tor these reasons I think the Circuit court did not err in overruling the sixth exception.
This disposes of all the questions arising upon the exceptions. It will be seen by them that none of them are well taken, except the third, in relation to the charge of compound interest. Tor the error in overruling that exception, this court is reluctantly compelled to reverse the decree, and to remand the case for further proceedings.
The other judges concurred in the opinion of Staples, J.
Decree reversed.