# Wheeling.

Estill & Eakle *et al.* v. McClintic's Adm'r *et al.*

Decided November 1, 1877.

1. When an administrator sells personal estate of his intestate and takes bonds therefor, this is a conversion of the assets of the estate, and he becomes liable as administrator to ac- account for the amount of the sales, and the bonds become his individual property, but a court of equity will, when it is shown that he has acted with prudence, diligence and caution, relieve him from this responsibility, if the bonds, without any fault on his part, prove unavailable ; but otherwise it will not.

2. When an administrator, residing where Confederate notes were the general currency during the war, receives and pays out such notes while he is indebted to the estate, in settling his accounts he should be charged and credited with the full amount of such notes received and paid out, without scaling them.

3. The ordinary commission allowed an administrator is five per cent on his receipts, but under peculiar circumstances a larger commission will be allowed him ; and if a commissioner in settling his accounts allows him a larger commission, and no exception is filed to the commissioner's report in the court below, the allowance of such larger commission cannot be for the first time objected to in the appellate court.

4. An administrator fails to settle his accounts in the time required by the statute, but is nevertheless allowed a commission during the time of such failure by a commissioner ; though no ex- ception is taken thereto in the court below, it may be objected to in the appellate court.

5. In a suit to settle up a decedent's estate and to charge his per sonal and real estate with the payment of all his debts, if the administrator has reported certain debts as solvent or doubt- ful, he must show that they have not been collected without fault on his part, but if he made such a report early in the war,

1877.
Special Term.

Estill & Eakle
*et al.*
v.
McClintic's
adm'r *et al.*

and he resides in a county in which the war was waged actively, and those debts appear to have been unavailable shortly after the war, in the absence of any evidence to show that the admin·istrator has been guilty of negligence, he ought not to be charged with such debt.

6. In such a suit the plaintiff, a non-preferred creditor, the administrator and a preferred creditor consent to the entry of a decree, whereby a particular creditor is declared to be a preferred creditor, and though none of the other non-preferred creditors parties to the suit were consulted, this decree was entered as a decree rendered by the consent of all parties to the cause; such decree cannot be modified or set aside by any subsequent proceedings in the cause, but the court should grant leave to any of the parties to the suit, who never consented to this decree to file an original bill to set it aside.

7. If without previous authority a commissioner sells a particular tract of land, and this sale is confirmed without exception, the court should permit any party interested to file his petition for a re-hearing of the decree confirming such sale; and, after the purchaser has been summoned to answer this petition, and it has been heard on its merits, the court should set aside said decree and sale, or refuse so to do, as on its merits, as shown by the evidence, justice to the parties requires.

An appeal from, and *supersedeas* to, a decree of the circuit court of the county of Greenbrier, at its November term 1875, in three causes in chancery therein depending, and which were heard together; in one of which Estill & Eakle were plaintiffs, and Thomas McClintic's administrator and others were defendants; in another of which Joseph M. Ocheltree was plaintiff, and Thomas McClintic's administrator and others were defendants; and in the other of which Wellington Hearn and wife were plaintiffs, and Thomas McClintic's administrator and others were defendants, granted upon the petition of James H. Renick, Samuel C. Beard and John Stuart.

The facts sufficiently appear in the opinion of the Court:

Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the decree complained of.

*J. W. Harris,* for appellants, referred to the following authorities:

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

*Cary, adm'r* v. *Mason,* 4 Call 605; *Cavendish* v. *Fleming,* 3 Munf. 198; *Dilliard* v. *Tomlinson,* 1 Munf. 183, *Guerrant* v. *Johnson,* 4 Munf. 360; *Elliott* v. *Carter,* 9 Gratt. 541; Code 1860, chap. 130, §17; 6 Rob. Pr. 1023, 1025; 1 Tuck. Com. 454; *Thompson* v. *Brown,* 4 Johns. Ch. 629; *White* v. *Johnson,* 2 Munf. 285; *Fitzgerald* v. *Jones,* 1 Munf. 150; and *McCall* v. *Peachy,* 3 Munf. 297.

*A. C. Snyder,* for appellees:

1. The sale of the slaves was a conversion of the assets by the administrator, and he became personally liable to the estate for the proceeds. The legal title to the bonds was in the administrator, Beard; and upon his death they passed to his administrator, and not to the administrator *de bonis non* of McClintic: *Bowden* v. *Taggart,* 3 Munf. 513; *Wernick* v. *McMurdo,* 5 Rand. 51; 3 Rob. Pr. 261; 2 Wms. on Ex'rs 1631-2; and 2 Lomax on Ex'rs 295 side, 485 top. It is shown by the record that there were five slaves, which at a moderate estimate would have sold in 1859 or 1860 for $500.00 each, making an aggregate of $2,500.00, and the interest thereon to this date would make the amount $5,000.00 as their value, instead of $1,664.04, the sum now claimed ·by the creditors: *Trummel* v. *Philleo,* 33 Texas 305; *Roberts* v. *Adams,* 2 S. C. 337.

2. The second error assigned may ᵥbe disposed of by a reference to the application, made by the administrator of said $250.00 The report of commissioner Withrow shows, that this $250.00 was collected by the administrator on the 12th January 1863. It is nowhere shown that this collection was made in Confederate notes; but as this court will take judicial notice, that such notes were the general currency in Greenbrier county during the war, to-wit: from January 1862, to April 1865, (*Simmons* v. *Trumbo,* 9 W. Va. 385), it may be conceded that the payment was made in Confederate notes, and

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

from this it follows that all the disbursements, as well as the collections, made by the administrator from January 1862 to April, 1865, were in Confederate notes. A reference to the facts (commissioner Walker's report, record, pp. 24, 25, 26 and 27) will show, that between those dates the administrator is credited by disbursements, $2,022.37, besides $300.00 paid by him on the Riffe debts, in May 1863 while during the same time he is charged with receipts for only $1,271.50, including said $250.00, thus proving that the administrator used not only this $250.00, but in addition thereto, $750.87 of his own Confederate money, in the payment of *ante*-war debts of his intestate, for which in his settlement he has been allowed credit at their nominal amount. If therefore there is to be any scaling of Confederate money, it should be applied to the $750.87 allowed the administrator, and not to the $250.00 which he collected and disbursed at its nominal amount: *Cary, adm'r*, v. *Mason*, 4 Call 605. But if the administrator did not, in fact, apply this $250.00 to the payment of debts, it was his duty to do so; and he will not be heard to come into court and say, that he used it in the purchase of gold at $3.00 for $1.00, and he is therefore only chargeable with one-third of its nominal amount, or the gold value. The creditors would have been glad to have gotten these notes on their debts. Certainly there is no evidence that any of them ever refused Confederate money, or that it was offered by the administrator to any creditor.

The plaintiffs in the amended bill, other than D. C. Riffe the appellee in this court, offer the following assignments of errors and considerations against the appellants.

1st. The court erred in allowing the administrator 7½ *per cent* commissions: *Woods* v. *Garnett*, 6 Leigh 271; *Triplett* v. *Jameson*, 2 Munf. 242; *White* v. *Johnson*, 2 Munf. 285; *Wood* v. *Lee*, 5 T. B. Mon. 50; *Chapman* v. *Shepherd*, 24 Gratt. 377.

2d. The court erred in crediting the administrator,

Beard, upon the *devastavit* found against him, and confirmed by the decree of April 23, 1869, with the $437.55 and $300.00 paid to D. C. Riffe on the debts Nos. 110 and 111, because:

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

I. The said payments were made, if made at all, before the taking and confirmation of commissioner Walker's report, at which time said payments were not claimed, or, if claimed, were rejected by the commissioner and court.

But whatever may be held to be the effect of said decree upon the parties who consented to it, it surely will not include creditors who were not, at the time it was made, formal parties to the suit, and who gave no consent whatever. The depositions of Price and others, show that the only parties asked to consent were the counsel for Estill & Eakle, Hearn and wife, and A. Beard administrator: (Record, pp. 88 to 90). And the amended bill, by which all the appellees here except Estill & Eakle were first made parties to this suit, was not filed until three years after said decree was entered. Therefore, even if the court rightly held that said Beard, as administrator, was concluded by his consent to the promotion of said debts, still it was error to allow him the said payments against the creditors of his intestate, who did not consent, thereby giving him the benefit of his wrongful consent to the prejudice of innocent parties: *Moseley* v. *Cocke,* 7 Leigh 224; *Anderson* v. *Woodford,* 8 Leigh 316.

3d. The court erred in confirming the sales of the following tracts of land, and the reports made by receiver Humphreys and commissioner Davis, of said sales, to-wit: A 1,400-acre tract, confirmed by the decree of January 3, 1870; a 2,000-acre tract, confirmed by the decree of April 10, 1871; and tracts of 200, 31, and 1,325 acres, respectively, confirmed by the decree of April 24, 1871; because—

I. Neither of said tracts is mentioned, described or in any way referred to in the bill, or in any commissioner's report, exhibit, paper or proceeding in the suit

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

II. Each of the decrees ordering sales of lands in this cause in terms directed the commissioners to *sell the lands, in the bill and proceedings mentioned*—*vide*, decrees of April 23, 1869 and of April 18, 1870; and as neither of these tracts was so mentioned, said decrees, which are the only decrees in the case directing sales of lands, did not authorize the sale of said tracts : *Runyon* v. *Darnall*, 10 Bush 67.

III. The decree of April 18, 1870, by which James W. Davis and Samuel Price are substituted as commissioners in place of A. R. Humphreys, and which is the only decree in the cause appointing and authorizing said Davis to sell lands as commissioner, directs "the said commissioners Davis and Price" to sell "*at the front door of the court house of Nicholas county*; and the posting of the notice of sale *shall be at the front of the court house of Nicholas county instead of the county of Greenbrier.*" In the report of the sale of the aforesaid 2,000-acre tract, commissioner Davis reports, that he sold said land "*in front of the hotel of Cabell & Vandiver, in the town of Lewisburg*, after advertising the time and place of sale for four weeks in the *Greenbrier Independent* and *at the court house door of Greenbrier county.*"  Thus it is shown that, this sale having been made in a *different county* and without the notice required by the decree, the court should on its own motion have set aside the report and sale: *Bothel* v. *Bothel*, 6 Bush 65; *Talley* v. *Starke*, 6 Gratt. 339; *Tennant* v. *Pattons*, 6 Leigh 196; *Welch* v. *Louis*, 31 Ill. 446; *Bailey* v. *Bailey*, 9 Rich. Eq. 392.

IV. The said tract of 2,000 acres and the aforesaid tract of 1,325 acres were each purchased by Samuel Price, who was at the time of said purchases a co-commissioner with commissioner Davis.

It is a well settled principle of law, that Price while holding the office of co-commissioner, whether actually acting as such or not, could not make a valid purchase of any part of the lands sold by his co-commissioner Davis : *Howery* v. *Helms*, 20 Gratt. 1; *Michoud* v. *Girod*, 4

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

How. 503; *Buckles* v. *Lafferty*, 2 Rob. 292; *Quarles* v. *Lacy*, 4 Munf. 251; *Smith* v. *Pope*, 5 B. Mon. 337; *McConnel* v. *Gibson*, 12 Ill. 128, and *Gross* v. *Pearcy*, 2 Pat. & H. 483; *Van Epps* v. *Van Epps*, 9 Paige 241.

4th. The court should have charged the administrator with the bonds and notes due to Thomas M. McClintic deceased, which came into his hands. The commissioner's report shows, that the administrator furnished him a list of such bonds and notes, which he reported as solvent, amounting to $2,080.76. It is true that another commissioner in a subsequent report states, that little may be expected from these claims; but the administrator having admitted to the former commissioner that these debts were solvent, it was his duty at least to have made an effort to collect them, and in the absence of all proof that he used proper efforts and diligence to do so, he should be charged with them : *Southall* v. *Taylor*, 14 Gratt. 269; *Crouch* v. *Davis*, 23 Gratt. 62.

Errors apparent upon the face of a commissioner's report will be considered and corrected in an appellate court, although no exception was filed to said report in the court below: *Williams*, v. *Buster* 5 W. Va. 342; *Walker* v. *Walker*, 2 Wash. 195; *White* v. *Johnson*, 2 Munf. 285; *Kerr* v. *Watts*, 6 Wheat. 550; *Ingraham* v. *Baldwin*, 21 N. Y. 9; *Sanford* v. *Granger*, 12 Barb. 392; *Slaughter* v. *Slaughter*, 8 B. Mon., 482; *Ringold* v. *Ringold*, 1 Har. & G. 11; *Cookus* v. *Peyton*, 1 Gratt. 431; *Boggs* v. *Johnston*, 9 W. Va. 434.

GREEN, PRESIDENT, delivered the opinion of the Court:

In March 1861 Estill & Eakle filed their bill in the circuit court of Greenbrier county against Andrew Beard, late sheriff of said county, and as such, administrator of Thomas McClintic, deceased, to charge him with a *devastavit* in failing to pay certain debts due from his intestate to the plaintiff and to subject the real estate of McClintic, in the possession of his widow and heirs,

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

to the payment of these debts. In 1874 this bill was amended making the sureties of said Beard, as such administrator, parties defendant, and asking to charge them with the amount of the *devastavit* of the administrator, he having become insolvent. Numerous unpreferred creditors of McClintic were parties plaintiff in this amended bill, together with the original plaintiffs. McClintic had been the administrator of Florence Riffe, and also of Amanda Ocheltree. Wellington Herne and wife distributees of Florence Riffe, also instituted their suit against said Beard as administrator of McClintic; and Joseph M. Ocheltree, a distributee of Amanda Ocheltree, instituted his suit against him as such administrator, each seeking to charge McClintic with a *devastavit* in administering each of said estates. These three causes were during their progress consolidated by an order of the court and afterwards heard together. During the progress of these causes the accounts of Beard as administrator of McClintic were twice settled by a commissioner, the dower of the widow of McClintic was assigned, the reversion of the heirs of McClintic in this dower land was sold, and also various other tracts of land belonging to McClintic. To the final settlement of these accounts of Beard as administrator of McClintic, as confirmed by the court by its decree of November 23, 1875, the appellants in this cause, some of the sureties of said Beard as such administrator object, as well as the appellees non-preferred creditors of McClintic; and these non-preferred creditors, appellees, in their counter assignment of errors also object to the confirmation by the court of several sales of portions of McClintic's lands. The first error assigned by the appellants is that said decree charges the said administrator of McClintic and his sureties with $1,332.02 with interest from November 6, 1875, the balance due on certain slaves of the estate sold by the administrator in December 1862, which balance the administrator never received, but for which a judgment in his favor was rendered by the court, at the

same term of the court that this decree was rendered. The facts relative to the sale of these slaves are thus stated in the report of commissioner Walker, dated November 1, 1867. "The administrator, it appears, hired out the slaves for some three years; those hired are credited to the estate in the years to which they properly belonged; and after that time and during the war, he sold the slaves at public sale, and collected the price of one of them, which Caldwell, a former commissioner in this cause, credited to the estate at $400.00, which is adopted as a fair price; he holds the bonds of the other purchasers, who refuse to pay, alleging that the slaves sold at greatly exaggerated prices on account of the currency then in circulation; upon one or more of the bonds the administrator has brought suit, and the soundness or unsoundness of this plea will be tested.    It appears from commissioner Caldwell's report, that one of these bonds is on R. M. Beard and M. C. Beard for $2,165.00; one on M. C. Beard for $950.00; and the third on H. F. Hunter for $1,200.00; all dated in December 1862.    Commissioner Caldwell does not credit these bonds to the estate as against the administrator, but reports them among the unadministered assets, and your commissioner thinks properly, as the administrator was doing, as he thought, the best under the circumstances he could for the estate; and it has resulted so, for had these slaves not been sold, they would have been an entire loss to the estate; as it is, whatever may be hereafter realized on these bonds will be saved. It seems to the commissioner, it would have been harsh to hold the administrator bound for the whole amount, unless he should hereafter recover from the purchasers." This report was confirmed on April 29, 1869.    After the amended bill, making numerous non-preferred creditors of McClintic formal plaintiffs and the sureties of his said administrator defendants, was filed, the court on the 23d of November 1874 made an order of reference to commissioner Withrow, directing him to report the preferred and non-pre-

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.
ferred creditors of McClintic, and the amount due each, and whether there was any further liability on the part of Beard, as administrator of McClintic. On September 28, 1875 he reports that on M. C. Beard's bond aforesaid $250.00 was paid January 12, 1863; and he scales the balance due on this bond and on the bond, of R. M. and M. C. Beard, at the request of the counsel for the non-preferred creditors; these he reduces to one-third of the nominal balance due on them, "as it then took $3.00 in Confederate money to buy one in gold." So reduced the balance on these bonds was $1,664.04. The commissioner however expressed the opinion, that this ought not to be regarded as assets of the estate then, as it was not certain it would be realized. The sureties of Beard, as administrator, excepted to this report so far as it could be regarded as charging the administrator with these bonds, and because in scaling them he makes the amount too large : the true scaled value being that ascertained by the jury in the suit on these bonds at that term of the court; this was $1,332.02. The non-preferred creditors by their counsel filed seven exceptions to this report; and the court in its decree of November 23, 1875 says: "That both the exceptants admitting that judgments were rendered at this term upon the debts, mentioned in said report in favor of the administrator as due from M. C. Beard, which judgments aggregate the sum of $1,332.02, with interest from November 6, 1875. The court adopts this as the amount chargeable against said administrator and his sureties on account of said debts."

This action of the court is urged by the appellants, sureties of said administrator, as erroneous, and is also objected to by the non-preferred creditors, the sureties insisting that these bonds should be regarded as unadministered assets, which should not be charged against the administrator then, or till and unless the amount of said judgments were collected. When commissioner Walker's report was confirmed, in which these debts

were so treated, there was, as the report shows, difficulty in ascertaining what was the proper charge on account of these debts, as they were in litigation, and it was difficult to say, as the law then was, whether they would be scaled, and if scaled, what was the proper mode of scaling them, there being then no statute on the subject in this State. When commissioner Withrow made his report, and more especially when the court acted on this report, all difficulty in ascertaining the just amount due on these bonds had disappeared, as a jury had scaled them to $1,332.02. And, though the non-preferred creditors, who insist on charging these debts at the commissioners' estimate of them, $1,664.04, were not parties to these suits, yet the court properly assumed in the absence of evidence, that the administrator of McClintic had exerted himself to obtain, and had obtained a judgment for all, that 'the estate was entitled to on these bonds, and that it would be unjust to charge the sureties of the administrator with a larger amount, than could be recovered on these debts upon a mere estimate of them made by the commissioner without any evidence, especially as the basis of this estimate was questionable. It has been pronounced as an improper basis by this Court in *Bierne* v. *Brown's representatives*, 10 W.Va. 748. On the other hand, the sureties of McClintic's administrator have no just ground to object to this action of the court. When an administrator sells personal property of his intestate, and takes bonds therefor, this is a conversion of the assets of the estate, and he becomes liable as administrator to account for the amount of the sales, the bonds become his individual property, and pass to his administrator on his death: *Bowden* v. *Taggart*, 3 Munf. 513; *Wernick* v. *McMurdo*, 5 Rand. 51. It is true, a court of equity under peculiar circumstances will relieve a personal representative from responsibility for the full amount of a sale of the property, which has come into his possession. Thus in the case of *Elliott* v. *Carter*, 9 Gratt. 541, an executor, being directed by a will to sell

1877.
Special Term.

Est.ll & Eakle et al.
v.
McClintic's adm'r et al.

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

land, besides the lien which the court decided he retained on the land, took of the purchaser bond with security, both the principal and security being then men in good credit, and being considered fully able to pay the amount; but both of them became insolvent before the purchase money was due, and the proceeds of the land, when after long litigation it was sold to pay the debt, left a large balance unpaid. The court held that under these circumstances the executor ought not to be charged with this balance. But there are in this case no circumstances which relieve the administrator and his sureties from his liability to be charged with the amount of the sales of these negroes as administered assets. There is no proof that he took any sureties on these bonds, or that they were originally the bonds of solvent parties, or that the obligors in them have since become insolvent. So far as the record shows, there is no reason to believe that the obligors in these bonds are not now as solvent as they ever were. And if so, the amount with which the administrator has been charged can be made out of the judgments rendered against the obligors in these bonds if solvent, and if insolvent now, as well as when the bonds were taken, the administrator ought to be charged, for he ought not to have taken such bonds. These bonds not being assets of McClintic's estate, it would have been improper for the court to keep his creditors waiting till these judgments were collected. The action of the circuit court in this matter must be approved.

The appellants assign as another error, that the sums of $250.00 and $400.00 received in Confederate money during the war on the sale of negroes, as also the sums of $388.28, $418.00 and $203.50 received by the administrator for hire of negroes of the estate, are charged in the account at their par value, though the Confederate notes were not worth more than one-third of their par value when received; and on the other hand the appellees assign as error, that the administrator was credited by a large number of payments of debts at par, though

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

they were paid during the war in Confederate notes. Neither of these complaints are well founded.

During the entire war the administrator was indebted to the estate, and being so indebted, when he received money in Confederate notes, it was his duty to apply it to the payment of debts of the estate, which debts could be paid in Confederate notes at par; and if he performed his duty and so applied the Confederate money, no injustice would be done to either him or the estate, by giving both the debits and credits at the nominal amount in Confederate notes paid out and received. If, on the other hand, he retained this Confederate money received for the estate, when he was indebted to the estate, and applied it to the payment of his own debts, and he was charged with it only at its scaled value, while he used it in the payment of his own debts as par funds, he would thereby be allowed to make an unjust speculation for himself by the improper appropriation of the funds of the estate. Whenever therefore an administrator, when he receives and pays out Confederate money during the war, is indebted to the estate, he should be both charged and credited with the Confederate money so received and paid out at par; and it should not be scaled. This is the rule laid down in *Ambler's ex'rs* v. *Mason et al.*, 4 Call 605; and the circuit court did not err in following this rule.

There are no other grounds of error alleged by the appellants, and nothing to their prejudice in the decree they complain of; but the appellees assign as errors many other provisions in the decree of November 23, 1875. They complain, that by that decree the court allowed to the administrator seven and one-half per cent commission on his receipts. It is true, that ordinarily the proper commission to be allowed an administrator is five per cent on his receipts, and that a larger commission ought not to be allowed, unless under peculiar circumstances: *Triplett's ex'rs* v. *Jameson*, 2 Munf. 242. But under peculiar circumstances he is allowed

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

more, as where he has unusual trouble in collecting debts and is put to extraordinary expense in employing clerks and agents; or in case of an executor, where he has had the management of real estate, and has had the care and education of the testator's children imposed on him by the will. In *Fitzgerald's ex'r* v. *Jones*, 1 Munf. 150 a personal representative was allowed a commission of seven and one-half per cent, and in *Cavendish* v. *Fleming*, 3 Munf. 198 and *McCall* v. *Peachy's adm'r*, 3 Munf. 297 ten per cent. It is true that in the present case the record does not disclose any peculiar circumstances, that would justify the allowance of more than five per cent commission to the administrator, but two different commissioners have settled his accounts, and each of them have fixed his commission at seven and one-half per cent, and the court confirmed in this respect both of these reports, no objection being made to them by any creditor on this account, though they filed many exceptions based on other features of the reports. We are therefore bound to presume, that these commissioners found in settling this account such pecular circumstances, as justified them in allowing this commission of seven and one-half per cent. It is true, that if a commissioner's report is erroneous on its face, it may generally be objected to in the appellate court, though no exception was taken in the court below; but without such exception it can not be impeached in the appellate court on grounds, and in relation to subjects, which might have been affected by extraneous testimony; thus interest should generally be charged against the administrator in a particular manner. But if a commissioner's account fails to charge an administrator with interest, it cannot be impeached on that account in the appellate court, if no exception has been filed in the court below, for whether interest ought to be charged might have been affected by extraneous testimony. *White's ex'r* v. *Johnson*, 2 Munf. 285. The amount of the commission to be allowed the administrator in this case might have been affected by extraneous

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

testimony and the amount allowed can not therefore be objected to for the first time in this Court. If the administrator had failed to settle his account in the time required by the statute, and he had been allowed a commission for receipts during this time, this allowance might have been objected to for the first time in this Court. For unless such failure occurred during the war, extraneous testimony could not be introduced to show the justice of allowing a commission, the statute expressly declaring that no commission under such circumstances shall be allowed: *Wood's ex'rs* v. *Garnett*, 6 Leigh 271; *Chapman's adm'r* v. *Shepherd, adm'r, et al.*, 24 Gratt. 377. But in this case no such forfeiture was incurred, for the first moneys received by the administrator was March 17, 1860, and in less than a year thereafter the suit was brought, and an order of reference directing a settlement of the administration account, made promptly in May, 1861; and the execution of this order was interfered with by the war. Another error assigned by the appellees is, that the administrator was allowed certain payments made to D. C. Riffe on a debt, claimed by him to be due from McClintic, as administrator of his mother, and therefore a preferred debt. The appellees deny that such debt exists, and further say, if it exists, it was not due from McClintic as administrator of Mrs. Riffe, but on other accounts. The amount of this claim was $1,469.66, with interest from January 17, 1860, according to the report of commissioner Withrow of September 28, 1875. Beard as administrator of McClintic paid on this debt $749.68 on October 27, 1860, and the further sum of $300.00 on May 25, 1863; but no such payments are noticed in the report of commissioner Walker, of date November 1, 1867; but the entire debt is reported as a non-preferred debt to be provided for, and this report was, on April 28, 1869, confirmed by the court; but on the 6th of December 1871 the court entered a decree, of which this is an extract: "And it appearing further by consent of all parties to these causes, that the two debts, numbered

one hundred and ten and one hundred and eleven, in the report of master commissioner Alex. Walker, in favor of D. C. Riffe, and those classed with the general debts, are, and of right should be, preferred debts, standing upon the same footing and entitled to share ratably with the debts, allowed and ordered to be paid Wellington Herne and wife, by decree rendered in these causes at April term 1871. And Joseph M. Ocheltree having filed with the papers of these causes an assignment from the said D. C. Riffe, as of the 25th of December 1870, for $593.75 of said debts due him as aforesaid, it is further adjudged, ordered and decreed, that the said Ocheltree have credit for the same on the purchase money due from him for the reversionary interest in the dower land bought by him, and that the same be likewise credited upon the debts due said Riffe." After the bill had been amended as stated before, and an order of reference made referring the cause to commissioner Withrow, depositions were taken which proved that the original plaintiffs in the suit, Estill & Eakle, Beard as administrator of McClintic, Herne a preferred creditor, and Riffe, by their counsel assented to so much of said decree of December 6, 1871 as was consented to, but that none of the parties, whose debts were non-preferred, were ever consulted or gave their consent to any part of said decree, except Estill & Eakle.

The amended bill makes no reference to this consent in this decree, except that it says, "that no part of the preferred debts, except that due to D. C. Riffe, and promoted to the preferred class, has been paid." The evidence in the cause, in reference to the character of these Riffe debts, is vague and unsatisfactory. But the decree of December 6, 1870 showing that all parties consented to its being declared a preferred debt, though it be shown to be the result of surprise, mistake, or even fraud, it is nevertheless binding on the court, and could not only not be disregarded in its subsequent decrees, but could not have been set aside by

even the most formal proceedings in this cause; it can only be set aside and nullified by a new suit brought for that express purpose, alleging its procurement in an improper manner, by surprise, mistake or fraud of the parties; and if the court should so consider, and that the complainants had not lost their rights by negligence or acquiescence, the court should in such new suit pronounce so much of said decree, as was so entered by consent, a nullity, and restore all parties interested, to the condition, in which they were when this consent portion of said decree was entered; and thereafter the court, in which said consent decree was entered, should proceed to decide the matter in controversy when properly raised in this cause, by a petition to re-hear so much of the decree of the 23d of April 1869, as held those debts to be non-preferred debts. This Court expresses no opinion with reference to the consenting parties of said decree, or on the conduct of others, who did not consent since, as waiving objection thereto, as it is not proper to consider such questions, except on an original bill brought for the express purpose; and leave should be given any party who considers himself aggrieved thereby, to bring such a suit in a reasonable time, to be fixed by the court. See *Manion* v. *Fahy*, decided at the present term of this Court.

If such original suit should be brought, and the court should set aside so much of said decree of December 6, 1870, as was entered by consent, after the opening of so much of the decree of April 1, 1869, as held these debts as non-preferred debts, and making the proper inquiries into the subject, the court should hold such debts to be non-preferred debts, leave should be given the non-preferred creditors, or any of them, to file a petition for the re-hearing of all the other decrees or such parts of them as were based on the assumption that these were preferred debts, and they should be corrected.

The appellees also excepted to so much of commissioner Withrow's report, as allowed with what had been paid

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

$150.00 as fees to the counsel of Beard, as administrator of McClintic, which the court overruled. The fee, claimed to be improper, is a fee of $100.00 in this suit. It is insisted, from the character of this suit that this fee, should have been charged to Beard personally. The counsel proves by his own oath, that this charge of $100.00 against the administrator is just and reasonable. There were more than a hundred different debts audited against the estate in this suit. It was the duty of the administrator as such to see, that no unjust demands against the estate were set up, and in making the investigation into the justice of these claims and the sufficiency of the proof offered to establish them, he had a right to advise with counsel employed by him as administrator. In the absence of evidence as to the extent and character of the services rendered the estate by the counsel in this case, I can not say that it was not worth $100.00 as the counsel has sworn it was. There was therefore no error in allowing this demand. The appellees also excepted to commissioner Withrow's report, because it did not in settling the administrator's account charge him with the full amount of $2,080.76, certain bonds and notes a list of which the administrator had furnished to commissioner Caldwell probably early in the war as solvent claims. When this commissioner made his report after the war, he states that the largest of these claims one of $1,398.76 was in suit. Commissioner Walker in his report of November 1, 1867 reports these claims, as unadministered assets; and he further reported that of these debts but little was to be expected, they being on persons, some of whom were insolvent; and he specially states that said large debts, which was still in suit, would not in all probability be realized. It is true as a general rule, that if an administrator reports debts as solvent or doubtful, it is his duty to produce proof of his exculpation from responsibility for them. He should show why such claims have not been collected. *Crouch et al.* v. *Davis's ex'or*, 23 Gratt. 100,

But in the present case this list of debts was furnished to the first commissioner in this cause, the record does not show when, but as the order of reference was made in May 1861, this list was probably furnished early in the war. The collection could not have been enforced during the war, and it is known judicially that a large number of persons, solvent, when the war commenced, were rendered insolvent by the war. These claims are reported as insolvent in 1867, and the fair inference would seem to be in the absence of testimony, that they became insolvent during the war. The first time we hear of them after the war is, that the administrator has sued on the largest of these claims, which suit was pending some time, and the commissioner reports that in all probability nothing can be realized from it. Under these circumstances the commissioner did right in not charging the administrator with these debts, but properly returned them as unadministered assets. The appellees also assign as error the confirmation of a sale of one thousand and four hundred acres of land on Cherry Tree run to Samuel Price, by the decree of January 3, 1870, and the confirmation of a sale of two thousand acres of land on Cherry river, that conveyed to McClintic by McClung, which sale was made to Floyd Estill and Samuel Price by the commissioner of sale, and confirmed by a decree of April 10, 1871, and the deed for which, was, by Estill's consent ordered to be made to Price, and also the confirmation by the decree of April 24, 1871 of the sales of these several tracts of land, one to John A. Rader, of two hundred acres, including the place where he lives; another to Harvey M. Rader of thirty-one acres, on Glade creek; and the third to Samuel Price of three hundred and twenty-five acres, on the head of Twenty Mile creek. The bill in this cause does not mention specially any of these tracts of land it simply charges in general terms, " that McClintic was possessed of and owned several valuable tracts of land at the time he died," and afterwards it particularly describes one tract of land, but it is not one

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

53

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

of those above named; it charges that McClintic was the owner in fee of a valuable tract of land in the county of Greenbrier containing several hundred acres, on which he resided at the time of his death, and on which his widow and children now reside;" and the bill particularly asks, that this tract of land may be sold; and it asks that "the order of reference to the commisioner may, among other things, direct an inquiry to be made as "to how much, and what lands McClintic owned and possessed at the time of his death; and that in the final decree so much of the personalty and lands, as may be necessary, may be subjected to the plaintiff's claims;" but no order was ever made in the cause directing such inquiry.

On the 23d day of April 1869 the court decreed "that Alexander B. Humphreys, who is hereby appointed a commissioner for that purpose, do sell at a specified place, after a specified notice, at public auction, on specified terms, all the lands in the bill and proceedings mentioned, which are not included in the widow's dower (to be sold together or in separate tracts, as the commissioner may deem expedient), and also the reversion of the dower land." The dower tract referred to was all the land particularly named in the bill, where the widow and children lived. The special commissioner of sale on October 20, 1869 reported, "that except of the tract out of which of the widow's dower was assigned after diligent inquiry he could only obtain descriptions sufficiently definite for advertising, a tract of one hundred and eighty acres in Nicholas county, and a tract of two thousand acres (as stated to your commissioner, but which he has since been informed contains only fourteen hundred acres) being the land assigned to McClintic in his division with Charles McClung, and not the tract purchased of said Charles McClung, and upon which his heirs hold a lien. There are other tracts, your commissioner is informed, belonging to the estate of said McClintic, which he will sell under the said decree, as

1877.
Special Term.

Eslill & Eakle
et al.
v.
McClintic's
adm'r et al.

soon as he can get descriptions of them; all of these lands had been sold for taxes." He reports the employment of an agent to redeem them, and their being redeemed. He reports the sale, pursuant to said decree, of the one hundred and eighty acres in Nicholas county at $1.00 per acre, the reversion in the dower land at $1.00 per acre, and said two thousand acre tract at 50 cents per acre; Samuel Price being the purchaser of the two last.

This report being excepted to, the court refused to confirm any of said sales, because of the inadequacy of price; and by its decree of October 26, 1869 ordered the special commissioner to re-sell "all the lands in the bill and proceedings mentioned, and heretofore sold and reported by him." The special commissioner then re-sold this tract of land, which is described in his former report as being the land assigned to McClintic in his division with Charles McClung (and not the tract purchased of Charles McClung), and which he says he has been informed contains only one thousand four hundred acres; and Samuel Price became the purchaser at the price of $980.00, and he complied with the terms of sale. These facts are stated in the decree confirming the sale, the report of sale not having been copied in the record. There was no exception to this report; and it is presumed that the sale was made pursuant to the terms of the decree. The sale was confirmed by the decree of January 3, 1870. The only objection urged by the appellees to the confirmation of this sale is, that "the decree directed the commissioner to sell the lands in the bill and proceedings mentioned." And as this tract was not mentioned in the bill or proceedings, the special commissioner had no authority to sell it. The counsel for the appellees seem to have failed to observe, that the decree of October 26, 1869, in describing the lands to be re-sold, uses not only the language of the former decree but adds thereto "and heretofore sold and reported by him, the special commissioner." And this particular tract of land is described in this report as one of those

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

heretofore sold, and the sale of which was set aside. If the terms of this decree of October 1869 had been noticed, I presume the appellees' counsel would not have assigned the confirmation of this sale as an error. This decree was not printed with the balance of the record, and thus I suppose escaped the observation of counsel. On April 18, 1870 the court decreed and ordered, "that James W. Davis and Samuel Price be substituted in the room and stead of Alexander R. Humphreys, heretofore appointed to sell the lands in the bill and proceedings mentioned; and said commissioners Davis and Price, or either of them, shall have all the power, heretofore conferred by the decree of this court on said Alexander R. Humphreys; and the said lands shall be sold at the front door of the court house of Nicholas county, instead of the county of Greenbrier." Under this decree, J. W. Davis, one of the commissioners, "on July 15, 1870 sold the tract of land in Nicholas county, on Cherry Tree river of two thousand acres, conveyed to the intestate, McClintic, by Charles McClung and wife, in front of the hotel of Cabell & Vandiver, in the town of Lewisburg, after advertising the time and place of sale for four weeks in the Greenbrier *Independent* and at the court house door of Greenbrier county; and Samuel Price and Floyd Estill became the purchasers at the price of $800.00," as appears from his report. This report was not excepted to, and this sale was confirmed by the decree of April 10, 1871; and it is one of the sales whose confirmation the appellees assign as an error on various grounds urged by them. One of these grounds was, that the sale was made at a different place and after a different advertisement than that expressly required by he decree, by which Davis was appointed a commissioner, as appears upon the face of the report of the commissioner of sale and the decrees in the cause, and it ought not therefore to have been confirmed.

The court on the 24th of April 1872 with the consent made in open court of Floyd Estill, the co-pur-

chaser with Price of said land, ordered the deed therefor to be made to said Price, and the said Price in this court by his written agreement filed in this cause consents, that this sale may be set aside, reserving a lien on the said tract of land for the purchase money he has paid thereon; which, being thus assented to by all parties in interest, should be done. The commissioner of sale J. W. Davis reports, that on July 4, 1870 he sold at Nicholas court house a tract of land of two hundred acres in Nicholas county to John H. Rader, he being the highest bidder at $455.00. At the same time he sold likewise at public auction to Harvey M. Rader, thirty-one acres of land at $42.00; and at the same time he sold to Samuel Price, three hundred and twenty-five acres on the waters of Twenty Mile creek, for $25.00. Which sales the commissioner reports were made after having advertised these lands as directed by the court. To this report there were no exceptions; and the said sales were confirmed by the decree of April 24, 1871. The appellees urge as an objection to the confirmation of all these rules made July 4, 1870, that commissioner Davis was not authorized to sell any of these lands. The record shows that by the decree April 18, 1870 James W. Davis and Samuel Price were substituted in the room and stead of Alexander R. Humphreys, the former commissioner of sale, and they or either of them were decreed to have all the powers heretofore conferred on said Humphreys; but before they should recover any money they were required to execute bond with good security in a certain penalty. By the decree of April 23, 1869, commissioner Humphreys, was authorized to sell "all the land in the bill and proceedings mentioned." No land having been mentioned in any of the proceedings other than the bill, which had transpired before this decree, the authority of commissioner Humphreys to sell was by this decree confined to the land in the bill mentioned; and the only land mentioned in the bill, was the tract in Greenbrier county, on which the widow and children

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

lived; though it was stated in the bill generally that McClintic owned several tracts of land. It is contended that commissioner Humphrey's authority to sell was confined by the decree appointing him to this single tract; and it is contended it cannot, by any fair construction, be extended to all the lands of which McClintic, died seized, by the bill having stated the fact that he died possessed of several valuable tracts of land. This authority of commissioner Humphreys was enlarged by the decree of October 26, 1869, whereby he was authorized to sell all the lands, that had been theretofore reported by him as sold, and the sales of which had been set aside, that is, besides said land mentioned in the bill as in Greenbrier county, a tract in Nicholas county of one hundred and eighty acres and another tract of one thousand and four hundred acres. The decree of April 18, 1870 conferred on commissioner Davis the same powers, which had been previously conferred on commissioner Humphreys, and these powers were never afterwards enlarged by any subsequent decree. And the appellees therefore insist, that commissioner Davis's powers to sell did not extend to these lands, sold by him on July 4, 1870, but extended only to the home place in Greenbrier, the two tracts of land in Nicholas county, of one hundred and eighty and one thousand and four hundred acres, having previously been sold by Humphreys as commissioner. It seems to me that it would be unreasonable to construe the authority of commissioner Davis to extend to the selling of these three parcels of land, sold by him on July 4, 1870. These tracts of land had in no manner been referred to in any of the proceedings prior to this sale, and so far as the record shows the existence of any such tracts of land, were entirely unknown to the court. It is true that the bill had stated, that McClintic owned several valuable tracts of land, but what or where they were it did not state, while the prayer of the bill was confined to the sale of the tract of land in Greenbrier, which is particularly des-

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

cribed. But this cannot, I think, be so construed as to so enlarge the meaning of the words conferring the power to sell on Davis, "the lands in the bill and the proceedings mentioned," to include tracts of land in another county, whose very existence was unknown to the court. But it does not follow that these sales ought for that reason only to be set aside. The court has the power to confirm a sale previously made without its authority, examples of such sales being confirmed by the court may be found in the cases of *Loudons* v. *Echols et al.*, 17 Gratt. 15; *Hughes et ux.* v. *Johnston*, 12 Gratt. 479. But the purchaser at sales so made cannot, of course, have his purchase protected against future disturbance after confirmation by the provisions of section 8 of chapter 132 of the Code of W. Va; as that is confined to sales made under a previous order of the court. When an unauthorized sale is thus confirmed by the court, creditors and others may not have had notice, that any such sale had been made, the record furnishing no information that any such sale of the land was to be made. They cannot therefore be estopped from objecting to such a sale after its confirmation to the extent that they would be, if the sale had been made by a commissioner authorized to sell the land; for in such case it would have been the duty of the parties interested to ascertain what sales had been made, and if they were improper, to have objected to the commissioner's report of such sales and to their confirmation. A decree therefore opening a sale of land made by an unauthorized person, though confirmed by the court without objection at the time, should be made more readily, than a decree opening such sale after confirmaion, where the sale had been previously authorized. It is further urged by the appellees' counsel, that the sale of the tract of land of three hundred and twenty-five acres to Samuel Price for $25.00, ought to be set aside, though confirmed without objection, not only for the reasons above assigned, but also for the further reason that Price having been appointed a com-

1877.
Special Term.

Estill & Eakle
et al.
v
McClintic's
adm'r et al.
missioner of sale with Davis, whether he actually acted or not, could not made a valid purchase of any part of the lands sold by his co-commissioner Davis. They refer to *Howery* v. *Helms*, 20 Gratt. 1; *Michoud* v. *Girod*, 4 How. 503; *Buckles* v. *Lafferty*, 2 Rob. 292; *Quarles* v. *Lacy*, 4 Munf. 251; *Smith* v. *Pope*, 5 B. Mon. 237; *Mc-Connell* v. *Gibson*, 12 Ill. 128; *Gross* v. *Pearcy*, 2 Pat. & H. (Va.) 483; *Van Epps* v. *Van Epps*, 9 Paige 241. We deem it improper to express any view with reference to these sales, made on the 4th day of July 1870 by commissioner Davis, because the proper parties necessary to be before us, when this inquiry is made, are not now parties to this proceeding. While for reasons above stated, I think an opportunity ought to be afforded the creditors or others interested to inquire into the propriety of these sales. Still no such inquiry can properly be made, unless the several purchasers at the sales, made on July 4, 1870, are brought before the court, and are afforded thus the opportunity of insisting that the sales made to them and heretofore confirmed should not be disturbed. It was said by Joynes, Judge, in *Loudons* v. *Echols*, 17 Gratt. 19, that "it would be contrary to natural justice, and to the practice which has prevailed in like cases, to conclude the purchaser, whose purchase has been confirmed and consummated by a conveyance of title, by a decision of the question whether the sale should stand or be set aside, before he has been brought before the court." And if improper now to decide this question, it is improper to express any opinion on the merits of these sales. The appellees therefore should be permitted to file a petition to re-open the decrees which confirmed the sales, made on July 4, 1870 by commissioner Davis.

The purchasers at such sales, or their representatives, should be summoned to answer these petitioners; all the evidence bearing on the justice or propriety of the sales should be heard, including evidence as to the value of said lands when sold, and what improvements on them

had been made by the purchasers, and what taxes paid by them, as also what rents and profits had been received from them; and the court should then, with all the facts and parties before it, do justice by setting aside the sales on such terms as are right, or by refusing to set them aside. This was the course pursued in *Loudons* v. *Echols et al.*, 17 Gratt. 15; *Hughes et ux.* v. *Johnston*, 12 Gratt. 479. See also, as indicating that this is the proper course to be pursued; *Pierce's adm'rs* v. *Trigg's heirs*, 10 Leigh 406; *Parker* v. *McCoy*, 10 Gratt. 594; and also the cases: *Bank of the United States* v. *Ritchie*, 8 Pet. 128; *Coger* v. *Coger*, 2 Dana 270; *McKee's heirs* v. *Hamm*, 9 Dana 520; *Parker's heirs* v. *Anderson's heirs*, 5 Mon. 445. In *Huston's adm'r* v. *Cantrill*, 11 Leigh 136; *Cocke's adm'r* v. *Gilpin*, 1 Rob. 26; and *Buchannon* v. *Clark*, 10 Gratt. 164, no supplemental proceedings were taken, because the purchasers were in those cases already parties in the causes. Here they are not, and supplemental proceedings must be had, before their rights as purchasers can be adjudicated. The objection urged that it is now too late to review in any manner the action of the circuit court in confirming these sales, is not well taken. Interlocutory decrees may, in proper cases, be re-heard at any time before a final decree, on petition to the court below; and an appeal, taken within five years from the rendition of a final decree, brings up for review all the interlocutory decrees, rendered during the progress of the cause, which would necessarily affect the final decree: *Camden* v. *Haymond*, 9 W. Va. 681. All the decrees rendered in these causes must be affirmed, except so much of them as determines the character of the bonds executed to David C. Riffe, as preferred or non-preferred debts, and except so much of them as confirms the sales made by commissioner Davis on July 4, 1870, and the decrees based on such portions of said decrees, as to which the appeal and cross assignment of errors by the appellees were improvidentially allowed, and except the decrees confirming

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

1877.
Special Term.

Estill & Eakle
et al.
v.
McClintic's
adm'r et al.

the sales of the two thousand acre tract on Cherry Tree river, made by commissioner Davis to Estill and Price, and ordering a deed therefor to be made to Price, which decrees are by consent of all parties set aside and annulled and the appellees must recover of the appellants their costs in this cause expended and thirty dollars damages; and this Court, proceeding to render such decree as the court below ought to have done, doth adjudge, order and decree, that the commissioner of sale, J. W. Davis, do re-sell the said tract of two thousand acres on Cherry Tree river, in the manner prescribed by the decree of April 18, 1870, and he shall report his proceedings herein to the circuit court of Greenbrier county; and this cause is remanded to the circuit court of Greenbrier county, with instructions, out of the proceeds of the re-sale of said tract of land, or out of any other funds which are now or may hereafter be under the control of the court in these causes, to pay to Samuel Price the moneys, which have been paid on the purchase of said tract of land and the said court shall further proceed with said causes in accordance with the principles laid down in this opinion, and further according to the rules and principles governing courts of equity.

Haymond, Judge, dissented from so much of the opinion and syllabus as adjudges that the decree confirming the sales made by commissioner Davis on July 4 1870, ought not at this time to be affirmed. The other Judges fully concurred with Green, President.

CAUSES REMANDED.