𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SHEPHERD'S ADM'R v. CHAPMAN'S ADM'R AND ALS.

THOMSON'S ADM'R v. SAME.

APRIL 21st, 1887.

1. APPELLATE COURT—*Decrees—Partial reversal.*—It is familiar doctrine
that where a decree is reversed in part, and affirmed as to the residue,
such reversal does not destroy the lien of so much of the decree as is
affirmed. *Moss* v. *Moorman,* 24 Gratt. 97. But it applies not to a
reversal of judgment and award of new trial.

2. IDEM—*Compound interest—Case at bar.*—In *Chapman's Adm'r* v. *Shep-*
*herd's Adm'r and als,* 24 Gratt. 377, this court reversed the decree of
the circuit court so far only as it allowed compound interest on the
amount due from Chapman's estate, from October 7, 1851, instead of
from August 4, 1853, and affirmed it in all other respects—

HELD :

> Such reversal did not affect the lien of the decree so far as it was
> affirmed.

Appeal from decree of circuit court of Orange county,
rendered August 4, 1883, in vacation, in the consolidated
causes of Shepherd's Administrator against Chapman's
Administrator, and Thomson's Administrator against Chap-
man's Administrator, heard together. The decree being
adverse to Thompson's Administrator, he appealed. Opin-
ion states the case.

*J. G. & W. W. Field,* for the appellant.

*John W. Bell,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This controversy is between the devisees and distributees under the will of Dr. William Shepherd, late of Orange county, on the one hand, and the estate of Alfred Thomson, deceased, of said county, on the other hand, as to priority of lien in respect of certain real estate.

The first of these suits, (*Shepherd's Adm'r* v. *Chapman's Adm'r,*) arose under these circumstances: Dr. Wm. Shepherd, of Orange county, died testate in the year 1825, seized and possessed of a large estate, real and personal; and by his will, the testator disposed of his estate to his brothers and sisters, and to the children of those who were then dead; and he thereby constituted his brother, James Shepherd, and his friend, Reynolds Chapman, his executors, and they qualified as such, giving separate bonds, and proceeded to administer the estate. These executors died, the one in 1842, and the other in 1844, without having settled their accounts, and largely indebted to the testator's estate; and thereafter, James W. Saunders qualified as administrator, with the will annexed, of said testator; and Andrew T. Shepherd qualified as the administrator of said James Shepherd, one of the executors of said testator; and John M. Chapman, a son of said Reynolds Chapman, and T. T. Slaughter qualified as the administrators of said Reynolds Chapman, the other executor of said testator, William Shepherd, they also giving separate bonds.

George Shepherd, a brother and one of the devisees and legatees under the will of Dr. William Shepherd, having died testate, Lewis B. Williams qualified as administrator, with the will annexed, of said George Shepherd; and the accounts of said fiduciaries not having been settled to the satisfaction of the dvisees and legatees, in 1849 said Lewis B. Williams, as such administrator, filed his bill in the circuit court of Orange against said Saunders, adminis-

trator of Dr. Shepherd, A. T. Shepherd, administrator of said James Shepherd, one of the executors of Dr. Shepherd, John M. Chapman, and T. T. Slaughter, the administrators of said Reynolds Chapman, deceased, the other executor of Dr. Shepherd, and against all the other and very numerous parties interested for a settlement of the fiduciary accounts and distribution of the estate of said testator, Dr. William Shepherd.

Passing over as immaterial to the question here much that was done in that suit, it may be briefly stated that the several accounts were ordered and taken. These accounts need only be referred to here so far as they affected the estate of J. M. Chapman, one of the administrators of Reynolds Chapman, who was one of the executors of the testator, Dr. Wm. Shepherd.

In the accounts stated and reported by the commissioner, Reynolds Chapman (one of the executors) was reported indebted to the estate of his testator, Wm. Shepherd, in the sum of $8,721.08 of principal and $11,933.95 of interest, aggregating $20,655.03 as of the seventh of October, 1851, to which time the account was brought down; and in his account with the legatees he was charged with the whole amount as an interest-bearing fund from the seventh of October, 1851.

To this report J. M. Chapman and T. T. Slaughter, the administrators of Reynolds Chapman, filed six exceptions, only one of which is material here, and that was the third of the series, and because Chapman was charged on the seventh of October, 1851, with the aggregate amount of principal and interest then found against him; and this sum of $20,655.03, as a principal sum of that date, was distributed among the legatees, thus compounding interest against him.

The cause was finally heard on the eighth of May, 1860, when a decree was rendered overruling all of said six ex-

ceptions, confirming the report aforesaid, and decreeing, among other things, personally against J. M. Chapman and T. T. Slaughter, the administrators of Reynolds Chapman, the said sum reported by the commissioner as aforesaid. At the rendition of this final personal decree J. M. Chapman was the owner of valuable real estate in the county of Orange, and he and his co-administrator, Slaughter, applied for and obtained an appeal from and *supersedeas* to said decree of May 8th, 1860.

This court, on the fourteenth of February, 1874, pronounced its decree, in which this language appears : "The court is of opinion that under all the circumstances of this case the estate of the said Reynolds Chapman should be charged with interest upon interest accrued only from the date of the decree rendered by the said circuit court appealed from ; and the court is further of opinion that there is no other error in the said decree of the said circuit court." Then follows the pivotal language in the decree, to-wit : "Therefore it is decreed and ordered, that for the error aforesaid the said decree of the said circuit court, so far as it is inconsistent with the foregoing principle, be reversed and annulled, and in all other respects be affirmed." And the decree gave costs to the appellants. So much for the first named suit of Shepherd's adm'r against Chapman's adm'r.

Now, as to the second of these suits, Thomson's adm'r against Chapman's adm'r, which originated as follows, to-wit : Subsequent to the decree of the eighth of May, 1860, in the first named suit, to-wit, on the eighth of October, 1866, the appellant's intestate, Alfred Thomson, surviving partner of the firm of Snead & Thomson, obtained a judgment in the county court of Orange against J. M. Chapman for $691.57, with interest from the first day of January, 1861, subject to certain small credits specified. Upon this judgment an execution issued on the eighth of

November, 1871, and was returned "no property found un-incumbered." In December, 1871, said Alfred Thomson filed his bill in the county court of Orange county against J. M. Chapman to enforce the lien of his judgment against the real estate of said Chapman; and in that court, on the twenty-fourth of January, 1874, the cause having been matured, a decree was entered directing the proper accounts; and thereafter the cause was, by operation of law, removed to the circuit court of said county.

The accounts ordered while the case was pending in the county court, were taken and returned on the twelfth of April, 1876. The master, among other debts amounting to $———, reported the debt of Alfred Thomson, the appellant's intestate, as a first-class lien upon the lands of J. M. Chapman. In this report of liens no mention was made of the lien now asserted by the legatees of the testator, William Shepherd, by reason of the decree of May 8, 1860, in the suit of *Shepherd* v. *Chapman.*

On the twenty-first of September, 1878, the master made a further report of debts against J. M. Chapman, and, among them, a decree of the circuit court of Orange, rendered at the October term thereof, 1876, in the said suit of *Shepherd* v. *Chapman* for $19,285.33; which was reported as a lien on the lands of J. M. Chapman, but subordinate to the liens mentioned in the former report of April 12, 1876.

By a decree rendered at the October term, 1878, the report of September 21, 1878, was confirmed without exceptions; the court, however, reversing its judgment as to the question of priority of liens. Other proceedings, which have no materiality here, were had. And in the progress of the cause, both the plaintiff and the defendant died, and proper revivals were had.

On the second day of October, 1879, a decree was entered which, among other things, appointed James G. Field and John W. Bell commissioners for the purpose, and directed

·them to sell the real estate of J. M. Chapman. The land was accordingly sold, the proceeds proving inadequate to ·the satisfaction of all the liens reported; hence this controversy for priority.

In this state of affairs, at the May term, 1883, of said ·circuit court, John W. Bell and G. D. Gray, receivers in the suit of *Shepherd* v. *Chapman,* by leave of court, filed ·their petition in this suit of *Thomson* v. *Chapman* to assert a priority of lien on the fund arising from the sale of J. M. Chapman's real estate; and basing their claim upon the .ground that the decree of May 8, 1860, in the case of *Shepherd* v. *Chapman,* was only reversed as to part, and was affirmed as to the residue, and insisting that, as to the part affirmed, their decree in *Shepherd* v. *Chapman,* rendered in May, 1860, is a subsisting lien prior and superior to the liens reported in the suit of *Thomson* v. *Chapman.* These receivers also excepted to the reports of liens in this cause, because the lien of the decree asserted by them was not reported as prior and superior to the other liens therein reported.

The two causes having by a previous order been directed to be so heard, came on and were .heard together on the fourth of August, 1883, when a decree was entered sustaining the exception aforesaid of the receivers, Bell and Gray, and giving priority to the lien asserted in favor of the legatees of William Shepherd, deceased, over the other liens reported in *Thomson* v. *Chapman;* and thus excluding the priority of lien reported in favor of appellant's intestate. From that decree the case is here on appeal.

The question is, who has the legal priority as to the fund in the hands of the court, which fund is the proceeds of the sale of the lands of J. M. Chapman, sold under a decree rendered in the case of *Thomson* v. *Chapman?* The fund in dispute·is largely inadequate to the satisfaction ·of all the liens reported.    .

In the first-named suit of *Shepherd* v. *Chapman*, there was a decree on the eighth of May, 1860, in favor of the devisees and legatees of William Shepherd, deceased, against J. M. Chapman and T. T. Slaughter, the administrators of Reynolds Chapman, deceased, who was one of the executors of said William Shepherd. This was a personal final decree, and was for a very large amount; and it attached as a lien upon the valuable real estate then owned by said J. M. Chapman, which had been sold, and the proceeds of which is in the hands of the court and is the fund in dispute.

From that decree an appeal and *supersedeas* was allowed; and this court, upon the hearing thereof, by its decree pronounced on the fourteenth of February, 1874, reversed the decree in a certain particular, but in all other respects affirmed it, and remanded the cause to the circuit court of Orange county for further proceedings. See *Chapman* v. *Shepherd*, 24 Gratt. 377. When the case went back to the circuit court there was nothing to do but to eliminate the charge of compound interest, and this for a period pointed out by the decree of this court. This was done, and the decree of the court below, thus corrected, in obedience to the decree of this court, was on the —— day of April, 1876, entered by said circuit court of Orange county for the sum of $ ——, that being the amount of its former decree of May 8th, 1860, less the said charge for compound interest, which was repudiated by the decree of this court. For the appellant, the administrator of Alfred Thomson, it is contended that the decree of this court in *Chapman* v. *Shepherd, supra*, was, in effect, a reversal, out and out, of the prior decree of May 8th, 1860, in favor of the devisees and legatees of Wm. Shepherd; that the lien thereby acquired by them was displaced and lost, and that preference was thus given to Thomson's judgment which, though subsequent to said decree of May 8th, 1860, is prior to the decree

in favor of said devisees and legatees of the —— day of
——, 18—, made in pursuance of the decree of this court
as aforesaid. On the other hand, it is claimed on behalf
of devisees and legatees of Wm. Shepherd that the decree
of this court only reversed the decree in their favor, of May
8th, 1860, as to the amount of compound interest improp-
erly charged, and affirmed that decree in all other respects,
and thus left the said decree of May 8th, 1860, a valid
subsisting lien in their favor for the true amount, less said
improper charge, as fixed by the decree of the court below,
made in obedience to the decree of this court.

We are of opinion that this claim on the part of the devi-
sees and legatees of Wm. Shepherd is well founded and
must be sustained to the exclusion of the contention of the
appellant. It is a familiar principle, in cases like this, that
he who is first in point of time, has the better right. The
decree of May 8th, 1860, is confessedly the oldest decree,
and is prior to the judgment at law recovered by the appel-
lant's intestate; and it was a final decree for money, and
attached as a lien upon the land, the proceeds of which is
the subject of controversy; and to deprive it of its supe-
riority would be a manifest preversion of justice, unless it
be required by some absolute and unbending principle of
law. Under the peculiar circumstances of the case, we
know of no principle demanding such gross injustice.
When the decree of May 8th, 1860, was rendered, the case
turned entirely upon six exceptions to the report of the
master upon which the decree was founded. Of these ex-
ceptions, the third in the series was because interest was
charged upon interest from the seventh day of October,
1851, the date to which the account was brought down,
instead of from the fourth of August, 1883, the date of the
decree. It was the compound interest charge, for this
specified period, which this third exception aimed at. The
court below overruled all the exceptions, confirmed the

master's report, and decreed accordingly.  And this court, when the case was here on appeal, by its decree reversed the court below only as to its erroneous ruling in respect to said third exception, and expressly *affirmed* the decree of May 8th, 1860, in *all other* respects.

. In delivering the opinion of this court, and in the concluding paragraph (24 Gratt. 391), Staples, J., said: "This disposes of all the questions arising upon the exceptions. It will be seen by them that none of them are well taken, except the third, in relation to the charge of compound interest.  For the error in overruling that exception, this court is reluctantly compelled to reverse the decree, and to remand the cause for further proceedings." This language tends quite strongly to the idea of an intention to reverse out and out; but this is not the decretal language. When we look to the decree itself, by which the court effectually speaks, a different face is put on the whole matter.  Thus we find the court distinctly ruling that the circuit court erred in charging interest from the seventeenth of October, 1851, upon the aggregate amount reported by the commissioner, * * * * thereby allowing interest upon interest; and then the decree says: "The court is of opinion that, under all the circumstances of this case, the estate of the said Reynolds Chapman should be charged with interest upon interest accrued only from the date of the decree rendered by the said circuit court appealed from; and the court is further of opinion that there is no other error in the said decree of the said circuit court.  Therefore it is decreed and ordered, that for the error aforesaid the said decree of the said circuit court, so far as it is inconsistent with the foregoing principle, be reversed and annulled, and in all other respects be affirmed."

The plain, common-sense meaning of this language is obvious.  It was intended to express, and did express in

terms of clear legal import, the idea that the decree below was right, and was affirmed as to everything except the charge of compound interest for the period specified. To cut off the excessive charge for compound interest required only a simple calculation, and to do this could in no manner affect the validity of the lien of the decree for the residue, the true amount, so readily reducible to absolute certainty. This court could have, as is its frequent practice, readily corrected and affirmed the decree. But, declining to be its commissioner, the court remanded the cause for the correction to be' made in the court below. Such, at least, was the simple effect of remanding the cause.

It is familiar doctrine, that where a decree is reversed in part and affirmed as to the residue, the reversal in part *does not* destroy the lien of so much of the decree as is unreversed or affirmed; and one prominent reason for this is, that equity looks to the substance of things, and not to the mere form. 2 Barton's Chy., § 295; *Knifong* v. *Hendricks*, 2 Gratt. 212; *Moss* v. *Moorman*, 24 Gratt. 97.

The last named case, upon principle, fully sustains the above view. In that case there was a decree against an administrator and his sureties; and on appeal by the plaintiffs the decree was reversed, and the administrator was held liable for a larger amount than was decreed against him in the court below; though the decree was also reversed in favor of a purchaser of land from the administrator. And whilst this court reversed the decree so far as it was erroneous, it, in other respects, affirmed it so as to continue the lien of the decree for the security *pro tanto* of the amounts which might be found due by the parties, respectively, against whom the said decree was rendered. In its decree, this court said: "And as the amount due by the parties against whom the said decree of the circuit court was rendered will be increased by the operation of this

decree, it is further decreed and ordered, that any lien which may have been created by the said decree of the circuit court shall remain in full force for the security, *pro tanto*, of the amounts which may be found to be due by the parties respectively against whom the said decree was rendered; and that to that extent, and for that purpose also, the said decree be affirmed."

Upon principle, and in effect, the decree in that case and in the case under consideration was the same. In that case was a wordiness of expression of the same thing which is necessarily implied here.

Again, the familiar principle, *certum est quod certum reddi potest*, applies with peculiar appropriateness to the case in hand. For here the appellant unreasonably and unjustly insists upon the superiority of a junior to a senior lien, because of the partial reversal of the latter subsequent to the acquisition of the former—and this where the only object of the partial reversal and remanding of the cause was to cut out and lop off the improper charge of compound interest, for a stated period—a thing not only perfectly capable of being rendered certain, but requiring only one of the simplest calculations in arithmetic. No principle was involved, the application of which might produce new or novel results; a simple and plain lopping off was all that was required, the result of which could involve no uncertainty.

The decree of this court in *Chapman* v. *Shepherd, supra,* in reversing, in part, the said decree of May 8, 1860, pointed directly to the compound interest charge as the only error in the decree, and pointed out, too, in specific terms, the period for which that charge was improperly made, and, in equally clear and specific terms, affirmed the decree in all other respects. Surely, then, the above maxim applies in all its force. We do not mean to say that the view above expressed applies to cases at law when, after a jury-

trial and judgment, the judgment on writ of error is reversed, and a new trial awarded; for in such cases the reversal is *total* and not *partial*, even though the *reason* for the reversal goes only to a part and not to the whole of the demand. But, as we have seen, the rule is different in equity, where it is considered a mockery of justice to sacrifice the material to the immaterial,—the substance to the shadow.

The decree appealed from is right upon both principle and authority and must be affirmed.

DECREE AFFIRMED.