# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## AULTMAN & TAYLOR MACHINERY CO. v. GAY.

### November 19, 1908.

1. NEGLIGENT FIRES—*Master and Servant—Sub-Servant—Agents—Sales—Delivery—Case at Bar.*—A manufacturer of traction engines sold one of its engines to a purchaser. The engine was shipped in a knocked-down condition and consigned to the manufacturer, in care of its agent, at the point of destination. When it arrived the agent notified the agent of the purchaser of its arrival and that he would unload it on the next day, and would be glad for him to be present and see it well done. Neither the purchaser nor any one representing him was present at the unloading. The agent of the manufacturer and an assistant employed by him unloaded it and put it together, and fired it up with wood, and ran it rapidly past the plaintiff's house several times, and in consequence of their negligence the plaintiff's house was burned, and he instituted this action to recover its value. The engine was intended for the use of coal and had no spark arrester. The contract did not designate any place of delivery and there is no evidence that the purchaser had assumed control of the engine or that it was in his charge. The purchaser was under no obligation to receive the engine until it was constructed and in good working order. The inference is irresistible that the engine was fired up by the manufacturer's servant and operated by him for the purpose of testing it and determining whether it was in a proper condition for delivery to the purchaser.

   *Held:* There was no delivery by the purchaser. The agent of the manufacturer was authorized to employ an assistant to aid in reconstructing and testing the engine, and the manufacturer is liable for the loss resulting from their negligence.

2. APPEAL AND ERROR—*Errors in Calculation—Amendments.*—Mere errors in calculation in the trial court which are readily corrected from the record, will be corrected on a writ of error, and a judgment which is otherwise right will be corrected and affirmed.

Error to a judgment of the Circuit Court of Rockingham county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Corrected and Affirmed.*

The opinion states the case.

*Conrad & Conrad,* for the plaintiff in error.

*D. O. Dechert* and *E. B. Crawford,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Marcellus C. Gay to recover of the defendant machinery company damages for the loss of his house by fire, alleged to have been caused by its negligent operation of a traction engine. There was a verdict and judgment thereon in favor of the plaintiff for $1,096, which the defendant company seeks to have reviewed and set aside by this court.

The record, considered (as it must be here) as upon a demurrer to the evidence, shows that the traction engine in question arrived at Harrisonburg, Va., in a "knocked-down" condition—that is, its several parts had to be put together in order to its operation. The engine was consigned by the defendant company to itself, in care of R. L. Floyd, at Harrisonburg, and was intended for the Valley Turnpike Company, which had negotiated for its purchase with said R. L. Floyd, acting on behalf of the defendant. The shipment was made to the defendant company in pursuance of an order contained in one of the printed forms furnished by the defendant to be signed by the purchaser of its machinery, which in this instance was signed by a committee of the Valley Turnpike Company. When the engine arrived at Harrisonburg, it was put together on the flat car on which it was carried by R. L. Floyd, who, acting on behalf of the defendant, had negotiated its sale to the turnpike

company. In the performance of this work of reconstruction, Floyd was assisted by one Elmer Evans. Immediately after it was put together, the engine, though intended for the use of coal, was fired with wood, and, without a spark arrester, was propelled rapidly three times up and down a steep hill, passing the plaintiff's house each time and throwing sparks toward the house, in which direction the wind was blowing. About the time the last trip was made up the hill, the house was found to be on fire, and was rapidly consumed.

The theory sought to be maintained by the defendant is that the fire started from a flue on the inside of the "L" of the house. It is useless to review the evidence on this subject. Its careful consideration shows that the jury were abundantly justified in their conclusion that the fire was caused by sparks emitted from the engine in consequence of its negligent operation.

It is contended on behalf of the defendant that, at the time of the fire, the engine was not its property. It is insisted, as the basis of this proposition, that delivery of the engine to the turnpike company was completed at the moment of its removal from the flat car.

The printed order for the engine, which was signed by the committee of the turnpike company, furnishes no warrant for this conclusion. There is no stipulation therein that the engine was to be delivered at the railroad station, or at any other specified place. The mere arrival of the engine did not, under this contract, constitute delivery. The engine arrived at Harrisonburg, under the express terms of the shipment, as the property of the defendant, in care of its agent, R. L. Floyd. Prior to the fire, nothing was said or done evidencing a relinquishment of dominion over the engine by the defendant, or an assumption of dominion by the turnpike company. The only notice the turnpike company had that the engine had arrived was a postal card from Floyd, the day before the fire, saying, "The engine has arrived here, and I unload it tomorrow. Would like for you to be on hand to see the work well done." The

member of the purchasing committee to whom the postal was addressed was not present when the engine was unloaded. The only person connected with the turnpike company who was present was C. H. Hetzel, the superintendent, who says that he did not assume charge of the engine prior to the fire; that he had nothing to do with it in any capacity, and that at no time did any representative of the defendant company inform him that the engine was in his charge or under his control. The order constituting the contract of purchase, which was prepared by the defendant, taken as a whole, precludes the idea that the arrival of the engine at Harrisonburg was to be regarded as its delivery to the purchaser. The turnpike company was under no obligation to receive the engine until it was constructed and in good working order. The inference is irresistible that, after Floyd and his assistant had put the engine together, it was run by them up and down the hill mentioned, for the purpose of testing it and determining whether it was in proper condition to be delivered to the company.

It is further contended on behalf of the defendant that, even though the engine was its property when the fire occurred, its operation up and down the hill was not by an agent of said company acting within the scope of his authority.

This view cannot be sustained. Floyd, who was acting for the defendant company, had negotiated the sale of the engine. The defendant, a corporation, had of necessity to act through an agent in setting up the engine and delivering it to the purchaser; and Floyd had manifestly been designated by the company for those purposes. The engine was shipped to the defendant company in his care, and he had, therefore, entire control over its disposition. In the discharge of the duties thus imposed upon him, he was necessarily authorized to employ such ministerial servants as he might require to enable him to perform the duties growing out of his relation to the engine and the defendant. There is nothing to suggest that, in employing the assistance of Evans, he exceeded his authority. He per-

sonally took charge of the work of setting up and unloading the engine, and directing its operation after it was removed from the car.   The jury were well justified in finding that Floyd and Evans were agents of the defendant in the operation of the engine at the time of the fire.

A number of exceptions were taken to the action of the circuit court in the matter of giving and refusing instructions.   A careful examination of these objections shows, that the defendant has suffered no prejudice from this cause, except in one minor particular, which is readily corrected.   Otherwise, the case was fairly submitted to the jury, and upon the issues presented to them their verdict cannot be disturbed.

The record shows that the plaintiff owned the house, which was burned, in common with others.   Instruction No. 3, given by the court, tells the jury that, should they find for the plaintiff, they must assess his damages at 99-140 of the value of the property at the time of the fire.   It is admitted that this fraction is slightly too large.   It should have been 331-490, instead of 99-140.   A simple calculation shows that the jury valued the house at $1,550.   Upon this basis, the plaintiff's interest in the house was $1,047, instead of $1,096, or $49 less than the verdict of the jury.

The judgment complained of must, therefore, be reduced to the extent of $49, making the true amount thereof $1,047, and as thus modified and corrected it must be affirmed.

*Corrected and Affirmed.*