## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## NATIONAL SURETY COMPANY AND OTHERS V. COMMONWEALTH OF VIRGINIA, EX REL. ETC.

### June 12, 1919.

1. APPEAL AND ERROR—*Supersedeas Bond—Remittitur.* — Section 3485, Code of 1904, is as follows: "The appellate court shall affirm the judgment, decree, or order if there be no error therein, and reverse the same, *in whole or in part,* if erroneous, and enter *such judgment, decree,* or *order* as the court whose error is sought to be corrected *ought to have entered.*" (Italics supplied.) In other words, the statute in terms authorizes a partial reversal, and the entry by the appellate court of a judgment, the effect of which must be to affirm in part and reverse in part the original judgment. It must follow that to the extent to which the judgment is affirmed, it is still valid and binding upon the original judgment debtor, and also upon the sureties in the supersedeas bond, who will be held to have entered into their contract with knowledge that their liability under it was to be controlled by the provisions of section 3485.

2. APPEAL AND ERROR — *Supersedeas Bond — Purpose of Bond.*— The bond is one of indemnity, the object of which is to secure to a successful litigant the ultimate fruits of his recovery, in whole or in part, and to insure him against loss from the possible insolvency of his debtor, or from other cause, pending the appeal.

3. APPEAL AND ERROR—*Supersedeas Bond—Remittitur.*—It would be anomalous to hold the sureties bond for the entire judgment in the event of an absolute affirmance, but not for a lesser sum in case of a partial affirmance in conformity to the statute, on the supposition that the latter constitutes a new and different judgment. It is in no correct sense a new judgment, but an amendment of the old judgment, with the erroneous part of it expunged, made in contemplation of the statute and in obedience to its mandate. It does not nullify the old judgment, but amends it, and as amended affirms it.

4. APPEAL AND ERROR—*Putting on Terms—Remittitur.*—A party may be in effect put on terms in the appellate court as well as in the trial court. When a party is put on terms in the ap-

pellate court because a judgment in his favor is excessive, it may reverse the judgment of the trial court and remand the cause, with direction to the trial court to put the successful party upon terms to release the excess, or else submit to a new trial, and if the release is made, to overrule the motion for a new trial, and render judgment for the correct amount with interest and costs; or, if the error be one of mere calculation, readily corrected from the record, or if the verdict and judgment of the trial court is excessive and the record affords plain and certain proof of the amount of the excess so that it may with safety be corrected, in either event the appellate court will amend and affirm the judgment of the trial court, and will not remand the case for such amendment.

5. APPEAL AND ERROR—*Supersedeas and Stay of Proceedings—Remittitur—Case at Bar.*—By order of the Supreme Court of Appeals, after a conditional reversal, plaintiff was allowed to enter a *remittitur* as to the interest, in which event it was declared that the judgment should stand affirmed. Defendants insisted that this order released the sureties on the supersedeas bond conditioned to perform and satisfy the judgment in case the judgment be affirmed. It did not appear whether the principal debtor was or was not solvent; but, if insolvent and defendants' plea prevailed, plaintiff would lose the principal of a demand to which the jury, the trial court, and the Supreme Court of Appeals had adjudged it entitled.

*Held:* That in reason defendants' position could not be sustained.

6. APPEAL AND ERROR—*Supersedeas and Stay of Proceedings—Remittitur—Case at Bar.*—The only modification that resulted in the judgment of the lower court from the appeal was not due to any change made therein by the Supreme Court of Appeals or by the trial court, but was made by the plaintiff itself. And in no proper sense could the be said to constitute a change in the judgment. It recognized the continued existence of the judgment as originally rendered, but refrained from exacting a part of it. That was not a judicial ascertainment by this court that the judgment, or any part of it, was void or voidable, but was an affirmation of the judgment in toto, if the plaintiff should elect to enter a *remittitur* as to the interest.

7. SURETYSHIP—*Extent of Liability—Implication.*—The surety's liability is not to be extended by implication beyond the terms of his contract. But, whatever that contract is, the surety is bound by it. Its terms can no more be restricted by implication than extended.

8. SURETY COMPANIES—*Principle by Which Contract Governed.*—The general rule as to the contracts of surety companies, where they

receive compensation for the risk assumed, is that they resemble insurance contracts and are governed by the same principles.

Error to a judgment of the Circuit Court of Loudoun county in an action of debt. Judgment for plaintiffs. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Mason Manghum, C. E. Nicol, J. J. Darlington, W. J. Lambert* and *Frank J. Hogan,* for the plaintiffs in error.

*Eppa Hunton, Jr., E. E. Garrett, George S. Law* and *John J. Jackson,* for the defendants in error.

WHITTLE, P., delivered the opinion of the court.

This case is the sequel to an action of assumpsit brought by the defendant in error, the Westinghouse Electric and Manufacturing Company against the plaintiff in error, the Washington and Old Dominion Railway, in the Circuit Court of Loudoun county. In that action the plaintiff recovered against the defendant a judgment for $81,652.19, with interest at the rate of five *per centum per annum* from May 1, 1913, till paid, subject to a credit of $791.13, as of the last-named date, and costs. To that judgment a writ of error and supersedeas was granted by this court upon condition that the defendant execute bond with approved security in the penalty of $100,000.00 with condition according to law. Whereupon, the defendant executed the required bond, with the plaintiff in error, the National Surety Company, a corporation, as its surety.

On March 15, 1917, this court entered the following order: "This day came again the parties, by counsel, and the court having maturely considered the transcript of the rec-

ord of the judgment aforesaid and arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in giving the instruction complained of upon the allowance of interest. It is, therefore, considered that said judgment be reversed and annulled, the verdict of the jury set aside, and that the plaintiff in error recover of the defendant in error its costs by it expended in the prosecution of its writ of error and supersedeas aforesaid here. And this cause is remanded to the said circuit court for a new trial to be had in conformity with the views expressed in the said written opinion. If, however, the defendant shall, within ninety days from the date hereof, elect in writing to relinquish the interest upon $81,652.19, the principal sum found by the jury, at five *per centum per annum* from May 1, 1913, subject to a credit of $791.13 as of that date, to March 16, 1915, the date of the verdict (such relinquishment to be filed with the papers in the cause in the clerk's office of the Circuit Court of Loudoun county as a part of the record), then said judgment shall stand affirmed. But in the event of a new trial, this provision is not to influence the jury in determining the question of interest."

The plaintiff, within ninety days from the day on which the foregoing order was entered, to-wit, on May 9, 1917, availed itself of its right of election, as provided in the order, and on that day elected in writing to relinquish the stipulated interest, filing its *remittitur* in writing with the clerk of the circuit court, who filed the same with the papers in the cause.

The plaintiffs in error, the National Surety Company and Washington and Old Dominion Railway, denying liability on the supersedeas bond, this action of debt was instituted thereon against them by the defendant in error, the Commonwealth of Virginia, suing at the relation and for the benefit of the Westinghouse Electric and Manufactur-

ing Company. For convenience, the defendant in error will hereinafter be called the plaintiff, and the plaintiffs in error the defendants.

The defendants interposed a demurrer to the declaration and pleas of *nil debet* and conditions performed; and neither party requiring a jury, and all matters of law and fact having been submitted to the court, the demurrer was overruled and the judgment under review pronounced in favor of the plaintiff against the defendants.

There is no ambiguity about the issue in this case. The order of this court of March 15, 1917, in the original case, was in terms set out in the declaration in this case, and the decision overruling the demurrer to the declaration is controlling. If the mandate of this court of March 15, 1917, affirmed the original judgment in behalf of the plaintiff against the defendant, the Washington and Old Dominion Railway, according to the true intent and meaning of the condition of the supersedeas bond, then the demurrer to the declaration was rightly overruled, and the defendants have not performed and satisfied the obligation of the bond, and are liable. If, on the other hand, the order of this court in intendment and result amounts to a reversal of the original judgment, then, in that event, the bond has been satisfied and the obligors therein are discharged. The condition of the bond is, "to perform and satisfy the judgment * * * in case the said judgment be affirmed, or * * * the writ of error, or supersedeas, be dismissed, and also to pay all damages, costs and fees which may be awarded against or incurred by * * * the petitioners, in the appellate court, and all actual damages incurred in consequence of the supersedeas."

[1-3] The question for our determination is within narrow limits and involves the construction of our own statutes and procedure. In such case little is to be gained by traveling beyond our borders to consult irreconcilable decisions of doubtful relevancy.

It seems to us that the clue to the correct solution of the question is found in the opening words of section 3485 of the Code (title, "Decision of appellate court") : "The appellate court shall affirm the judgment, decree, or order if there be no error therein, and reverse the same, *in whole or in part,* if erroneous, and enter *such judgment, decree* or *order* as the court, whose error is sought to be corrected, *ought to have entered."* (Italics ours.)   In other words, the statute *in terms* authorizes a *partial reversal,* and the entry by the appellate court of a judgment, the effect of which must be to affirm in part and reverse in part the original judgment.   It must follow that to the extent to which the judgment is affirmed, it is still valid and binding upon the original judgment debtor, and also upon the sureties in the supersedeas bond, who will be held to have entered into their contract with knowledge that their liability under it was to be controlled by the provisions of section 3485. The bond is one of indemnity, the object of which is to secure to a successful litigant the ultimate fruits of his recovery, in whole or in part, and to insure him against loss from the possible insolvency of his debtor, or from other cause, pending the appeal.   It would, indeed, seem anomalous to hold the sureties bound for the entire judgment in the event of an absolute affirmance, but not for a lesser sum in case of a partial affirmance in conformity to the statute, on the supposition that the latter constitutes a new and different judgment.   It is in no correct sense a new judgment, but an amendment of the old judgment, with the erroneous part of it expunged, made in contemplation of the statute and in obedience to its mandate.   It does not nullify the old judgment, but amends it and, as amended, affirms it.   The course of decision of this court has for more than a century so construed statutes of this State substantially similar to the present statute.   The cases of *Williams* v. *Howard,* 3 Munf. (17 Va.) 277, decided in 1812; *Gibson*

v. *Governor*, 11 Leigh (38 Va.) 600; *Lewis* v. *Arnold*, 13 Gratt. (54 Va.) 454; *Buena Vista* v. *McCandlish*, 92 Va. 297, 23 S. E. 781; *Worrell* v. *Kinnear Mfg. Co.*, 103 Va. 719, 49 S. E. 988, 2 Ann. Cas. 997; *Moreland* v. *Moreland*, 108 Va. 107, 60 S. E. 730; *Aultman* v. *Gay*, 108 Va. 647, 62 S. E. 946; *McIntyre* v. *Smyth*, 108 Va. 751, 62 S. E. 930; *Powers* v. *Hamilton*, 117 Va. 810, 86 S. E. 98; *Washington & O. D. Ry.* v. *Westinghouse Co.*, 120 Va. 620, 89 S. E. 131, 91 S. E. 646.

[4] Judge Burks, in his admirable work on Pleading and Practice, p. 772, says, with respect to "putting a party upon terms": "A party may be in effect put on terms in the appellate court as well as in the trial court. When a party is put on terms in the appellate court because a judgment in his favor is excessive, it may reverse the judgment of the trial court and remand the cause, with direction to the trial court to put the successful party upon terms to release the excess, or else submit to a new trial, and if the release is made, to overrule the motion for a new trial and render judgment for the correct amount, with interest and costs (citing *Buena Vista Co.* v. *McCandlish, supra*) ; or, if the error be one of mere calculation, readily corrected from the record, or if the verdict and judgment of the trial court is excessive and the record affords plain and certain proof of the amount of the excess so that it may with safety be corrected, in either event the appellate court will amend and affirm the judgment of the trial court, and will not remand the case for such amendment." (Citing *Aultman* v. *Gay*, *supra*, and *McIntyre* v. *Smyth, supra;* Code, sec. 3452; Ann. Code W. Va. 1906, sec. 4037; *ante*, sec. 373.)

We are persuaded that the procedure adopted by this court in the case of *Washington and Old Dom. Ry.* v. *Westinghouse, supra*, is so thoroughly established by direct and controlling decisions and has been so long acquiesced in and acted upon as to bring it within the influence of the maxim of *stare decisis*.

So far as we are advised, in all these years the liability of sureties in appeal bonds upon these modified affirmances has not been drawn in question, and the present inquiry is *res integra* in this court. At all events, the research of the very able counsel who represent the plaintiffs in error has failed to disclose any pertinent Virginia authority on the subject, or if they have discovered any they have omitted to draw our attention to it.

The case of *Shepherd's Adm'r* v. *Chapman's Adm'r,* 83 Va. 215, 2 S. E. 273, cited by counsel for defendants, is in accord with the long line of precedents to which attention has been called. That, it is true, was a chancery cause, but it was there held: "It is a familiar doctrine that where a decree is reversed in part and affirmed as to the residue, such reversal does not destroy the lien of so much of the decree as is affirmed." *Chapman* v. *Shepherd,* 24 Gratt. (65 Va.) 377; *Knifong* v. *Hendricks,* 2 Gratt. (43 Va.) 212, 44 Am. Dec. 385; *Moss* v. *Moorman,* 24 Gratt. (65 Va.) 97; 2 Barton's Chy. Pr., sec. 295. The court in the principal case affirmed the decree except as to a charge of compound interest, and remanded the cause with directions that the illegal interest be stricken out. The opinion then uses this language: "We do not mean to say that the view above expressed applies to cases at law where, after a jury trial and judgment, the judgment on writ of error is reversed and a new trial awarded; for in such cases the reversal is *total* and not *partial,* even though the reason for the reversal goes only to a part and not to the whole of a demand." That is an accurate statement as to the effect of the reversal of the judgment in the instance given; it was plainly an *absolute reversal* which *set aside* the *judgment* and *awarded a new trial.* But we do not understand the opinion to mean that under our decisions and section 3485 of the Code this court may not put a party upon terms, or reverse a *judgment, decree or order,* "*in whole or in part.*"

[5]   If the contention stressed upon demurrer possessed merit, it is hardly reasonable to suppose that it would have escaped the attention of the astute and able bar of the State all these years.   The present case affords a startling illustration of the result that would flow from adopting defendants' contention.   Plaintiff's judgment amounts to $81,-652.19, with interest (subject to a credit of $791.13).   By the order of this court of March 15, 1917, after a conditional reversal, plaintiff was allowed to enter a *remittitur* as to the interest, in which event it was declared the judgment should stand affirmed.   Defendants insist that the March order released the sureties.   It does not appear whether the principal debtor is or is not solvent; but if insolvent, and defendants' plea prevails, plaintiff would lose the principal of a demand to which the jury, the trial court and this court have adjudged it entitled.   Surely, to uphold so monstrous a perversion of justice, it should at least come well supported by authority.

[6]   Our opinion is that the judgment of the circuit court in overruling defendants' demurrer to the declaration is sustained by our own precedents, and, therefore, a review of outside authorities upon a matter involving the construction of domestic statutes and procedure would not be helpful. We have no doubt of the correctness of the foregoing construction of our statutes with regard to the liability of the obligors, both principal and surety, on the bond in question. But with respect to the specific contention of counsel for the defendants, that the effect of the order of this court of March 15, 1917, and its acceptance by the plaintiff was to destroy the identity of the original judgment and constitute a new and different judgment as to which the surety bore no contractual relation and was under no obligation to discharge, we wish to observe:   That in the instant case this court has not entered any new judgment nor has it ordered the circuit court to make any change in its judgment.   It

has done these things conditionally, but *only conditionally.* What was actually done, as the order and the subsequent facts show, was to adjudge that if the plaintiff would within ninety days release part of the recovery, the judgment of the lower court would stand affirmed *in toto* (including judgment for the interest). In other words, the only modification that has resulted in the judgment of the lower court from the appeal is one not due to any change made therein by this court or by the trial court, but made by the plaintiff itself. And, in no proper sense can that be said to constitute a change in the judgment. It recognizes the continued existence of the judgment as originally rendered, but refrains from exacting a part of it. That was not a judicial ascertainment by this court that the judgment, or any part of it, was void or voidable, but was an affirmation of the judgment *in toto,* if the plaintiff should elect to enter a *remittitur* as to the interest.

Viewing, then, the situation, not as at the date of this court's order (which was dependent on certain doubtful contingencies), but as at the time action was brought on the supersedeas bond, the judgment of the circuit court stood affirmed as *a whole,* albeit part of it had been released by the plaintiff's own act.

Applying, then, the *strictissimi juris* doctrine to the liability of the surety, it seems clear that the condition of the supersedeas bond has been broken and the surety company is liable.

[7] This court, in speaking of the above rule, says: "It (the surety's liability) 'is not to be extended by implication beyond the terms of his contract.' But, whatever that contract is, the surety is bound by it. Its terms can no more be restricted by implication than extended." *Mann* v. *Mann,* 119 Va. 630, 634, 89 S. E. 897, 898.

[8] The general rule as to the contracts of surety companies, where they receive compensation for the risk as-

sumed, is that they resemble insurance contracts and are governed by the same principles. 27 Am. & Eng. Ency. L. (2d ed.) 452.

The second assignment of error complains of the disallowance of a set-off of a judgment for $417.32, costs recovered by the Washington and Old Dominion Railway against the plaintiff. That demand was not put in issue by the pleadings nor set out in the grounds of defense (Code, secs. 3249, 3298), and, therefore, was not within the cognizance of the court.

We think neither of the grounds of error assigned has been maintained, and are of opinion to affirm the judgment.

*Affirmed.*

SIMS, J., dissenting:

The writ of supersedeas, which was awarded by this court on granting the writ of error on the former appeal, stayed the proceedings on the judgment of the trial court.

The supersedeas bond in suit was executed under section 3470 of the Code of Virginia, as amended (Acts, 1914, p. 713), and the condition of it (which was in accordance with the terms of such statute) was, so far as material, "* * * to satisfy the judgment proceedings on which are stayed in case the said judgment be affirmed or the writ of error or supersedeas aforesaid be dismissed and also pay all damages, costs and fees which may be awarded against or incurred by the appellant or petitioner, in the appellate court and all actual damages incurred in consequence of the supersedeas."

Neither the writ of error nor supersedeas was dismissed, nor were any damages, costs or fees awarded against or incurred by the said appellant.

Nor does the declaration allege any "actual damages incurred in consequence of the supersedeas." It does not appear from the record before us that the said appellant is

30

less financially responsible than it was when the proceedings aforesaid were stayed as aforesaid, or that the ability to enforce the payment of the judgment which subsequently came into being by the *remittitur* and under the order of this (the appellate) court, was in any way injuriously affected because of said supersedeas and the consequent delay pending the proceedings on appeal, etc.

The case before us, therefore, being an action of debt on the supersedeas bond, involves the determination of the meaning and effect of that part only of the obligation of the surety, the National Surety Company, which is contained in the following language of the bond, namely, "* * * to satisfy the judgment proceedings on which are stayed in case the said judgment be affirmed. * * *"

It is held by all the authorities on the subject, and unquestioned by either side in argument before us, that "it is elementary that the obligation of sureties upon bonds is *strictissimi juris*, and not to be extended by implication or enlarged construction of the terms of the contract entered into." *Crane* v. *Buckley*, 203 U. S. 441, 27 Sup. Ct. 56, 51 L. Ed. 260.

On applying this rule, we see that the judgment named in the terms of the bond is the original judgment of the trial court in case the said judgment be affirmed. That is to say, the terms of the bond contain two stipulations with respect to the judgment which must be fulfilled before the obligation to pay the judgment arises, namely: (a) it must be the original judgment aforesaid of which payment is asked, and (b) it must be that judgment "affirmed."

These two stipulations will be considered separately.

(a) The original judgment was held to be erroneous in part and the whole judgment "reversed and amended" by the order of this court entered in disposing of the case on appeal; the verdict of the jury was set aside with costs to the said appellant, and the cause was "remanded to the said circuit court for a new trial."

If the order of this court had stopped at that point, there could be no doubt that the judgment of which payment is asked under the obligation of said bond is not (a) the original judgment aforesaid, or (b) that judgment "affirmed."

But the order of this court goes further, and provides, in substance, that the defendant might elect to remit that portion of the judgment which this court held on appeal to be erroneous, and in the event that such right of election was exercised within the stipulated period by writing filed as stipulated, "then said judgment shall stand affirmed." That is to say, when purged of said erroneous part of it, the judgment should "stand affirmed."

When, therefore, the right of election aforesaid was exercised and the original judgment was purged of its error, that portion of it which stood "affirmed" was not the original judgment of the trial court, but, in truth, the judgment of the appellate court. The appellate court had the right to enter such judgment under section 3485 of the Code. That statute, so far as material, provides: "The appellate court shall affirm the judgment * * * if there be no error therein, and reverse the same, in whole or in part, if erroneous, and enter such judgment * * * as the court whose error is sought to be corrected ought to have entered." But since the appellate court did not "affirm the judgment," but found error therein, when the judgment now in question came into being under the order of the appellate court, it was the judgment of the latter and not of the trial court; and, hence, such judgment is not that denominated in the terms of the bond aforesaid. To hold otherwise would be to extend the obligation of such bond "by implication or enlarged construction of the terms of the contract entered into," which, as we have seen, cannot be done as against the surety on the bond. Hence, on this ground it is plain, I think, that the said obligation of the bond in suit cannot be held to require the surety to pay the judgment in question.

There is nothing in section 3485 of the Code aforesaid authorizing the appellate court to enter judgment against sureties on the appeal or supersedeas bond as there is in the statute law of some of the States. With us, we have to look only to section 3470 of the Code and the terms of the appeal or supersedeas bond executed thereunder to ascertain the extent of the obligation of the sureties.

(b) And, as we have seen, the original judgment of the trial court was not "affirmed" either by the first portion or by the last portion of the order of this (the appellate) court entered on the disposition of the case on appeal. The first portion of the order expressly reversed the original judgment. The last portion of the order expressly affirmed only a part of the original judgment. Doubtless, under the statute last cited above (sec. 3485 of the Code) that the common law rule on the subject is changed, and the appellate court may reverse a judgment at law "in part"; but even so, the most favorable construction to the contention of the defendant in the instant case which can be given to the order of this court aforesaid is, that it reversed the original judgment of the trial court "in part" and affirmed it "in part." That action, *"strictissimi juris,"* was not to affirm the judgment named in the terms of the bond, but only to partly affirm it. Hence, since such terms are not to be "extended by implication or enlarged by construction" against a surety, on this ground also it is plain, I think, that the obligation of the bond in suit cannot be held to require the surety to pay the judgment in question.

The obligation of such a bond is purely a matter of statutory requirement on the subject. Our statute on that subject is section 3470 of the Code, as amended. As held in *Bemiss* v. *Commonwealth,* 113 Va. 490, at p. 493, 75 S. E. 115, such statute is to be read into every statutory supersedeas bond which has been executed since its passage. However, in the instant case, there is no variance between the terms of the bond and the requirements of the statute.

Our statute might have provided that supersedeas bonds should contain the obligation to perform and satisfy, not only "the judgment proceedings on which are stayed in case the said judgment  \*  \*  \* be affirmed  \*  \*  \*," but also any judgment of the appellate court for any part of said judgment, or some words to that effect; but the statute does not so provide. And, since our statute contains the provision that the supersedeas bond shall contain the obligation to pay "all damages incurred in consequence of the supersedeas," no good reason is perceived why such bond should contain any further obligation as to payment of any judgment other than the original judgment of the trial court. For if any part of the judgment is affirmed on appeal, the lien thereof on any real estate of the judgment debtor remains undisturbed by the appeal. *Shepherd's Adm'r.* v. *Chapman's Adm'r,* 83 Va. 215, 2 S. E. 273. And as to the enforcement of the payment of the part of the judgment affirmed on appeal by execution, if there be a change of condition, such as insolvency of the judgment debtor or decline in financial responsibility pending the appeal, so that any loss may occur in enforcing the judgment finally obtained by reason of the delay resulting from the supersedeas, indemnity against such loss is fully provided for by the clause in the bond or statute last above quoted; and if there is no change in such financial condition, the judgment finally obtained can be as effectually enforced against the principal debtor without as with a bond; and it would be an unnecessary burden and expense to require the appellant to give bond with surety creating the obligation to pay whatever judgment may be finally obtained against the appellant before he can seek relief from error going only to a part of the original judgment, regardless of whether the delay caused by the appeal shall affect or not affect the ability of his creditor to enforce the judgment.

The supersedeas bond statutes of the different States involved in the numerous decisions cited in argument, differ among themselves in various ways, and, so far as quoted in argument or in the authorities cited, they all seem to differ from the Virginia statute in the lack of any provision such as that last above quoted.

There are four cases which are relied on by the defendant in error, namely, *Hopkins* v. *Orr*, 124 U. S. 510, 8 Sup. Ct. 590, 31 L. Ed. 523; *Harding* v. *Kuessner*, 70 Ill. App. 355, affirmed in 172 Ill. 125, 49 N. E. 1001; *Butt* v. *Stinger*, 4 Cranch. C. C. 252, Fed. Cas. No. 2246; and *Page* v. *Johnson*, 1 D. Chip. (Vt.) 338, to sustain the position that an order of an appellate court upholding a judgment of the court below in part and allowing a *remittitur* as to the residue thereof, is an affirmance of the judgment. But all four of these decisions are influenced by the peculiar statute law governing the subject in those jurisdictions. In all of them the effect of the statute law was to make the obligation of the appeal or supersedeas bonds cover whatever judgment might be rendered by the appellate court. See also *Grover, etc., Co.* v. *Radcliffe*, 137 U. S. 290, 11 Sup. Ct. 92, 34 L. Ed. 670, on the subject of the *Hopkins* v. *Orr* case.

A great number of cases are cited and relied on by the plaintiff in error to sustain the converse of the position of the defendant in error; but most of these cases are likewise influenced by peculiar statute law in force in those jurisdictions. All of these cases to which I have had access, like those relied on by the defendant in error, involve statutes which differ, it would seem, from the Virginia statute in the lack of the provision aforesaid, as to "all damages incurred in consequence of the supersedeas." Such cases, with notation as to the peculiar statutory or bond obligation features involved, are as follows: *Seymour* v. *Gregory*, Fed. Cas. No. 12,686, 10 Bliss 13 (to "prosecute writ of error to effect") ; *Crane* v. *Buckley*, 203 U. S. 441, 27 Sup. Ct. 56, 51

L. Ed. 260 (to "prosecute appeal to effect") ; *Rothgerber* v. *Wonderly*, 66 Ill. 390 (to "duly prosecute the appeal to effect") ; *Feemster* v. *Anderson*, 6 T. B. Mon. (Ky.) 537 (to pay, "provided he gets cast") ; *Galloway* v. *Yates*, 10 Minn. 75 (Gil. 53) (to "prosecute appeal to effect * * * and if the judgment be affirmed or any part thereof be affirmed") ; *Quinn* v. *Adair*, 4 Ala. 315 (to "prosecute such appeal to effect; and in case he be cast therein") ; *Blair* v. *Sanborn*, 82 Tex. 686, 18 S. W. 159 (to "prosecute the appeal with effect") ; *Cobb* v. *Morrison* (Ala.), 73 So. 42 ("if the bondsmen shall fail in said appeal").

In the following cases cited and relied on by the plaintiff in error there seems to have been nothing in the local statute law different from that of Virginia, except that it does not appear whether there was any provision as to the bond covering all actual damages incurred in consequence of the supersedeas.

In *Kibble* v. *Butler*, 27 Miss. 586, the condition of the bond was that the obligors "would pay the judgment if affirmed." The appellate court reversed the judgment of the trial court merely because of its form, and entered a judgment of its own in another form, but "in effect the same judgment as the one reversed." That holding goes even beyond the conclusion reached above in the instant case, and is a convincing illustration of the application of the *strictissimi juris* rule.

In *Lehman* v. *Amsterdam Coffee Co.*, 151 Wis. 207, 138 N. W. 606, Ann. Cas. 1914 A, 1299, the condition of the bond was that the obligors would pay "if the judgment so appealed from, or any part thereof, be affirmed," and that the payment would be "the amount directed to be paid by said judgment, or the part of such amount as to which the said judgment shall be affirmed, if it be affirmed only in part. * * *" The appellate court reversed the judgment and ordered a new trial, unless the plaintiff elected to take

judgment for $1,000, in which case the trial court was ordered to enter judgment for that amount. This was in substance what was done on the appeal involved in the case before us, the only difference being that this (the appellate) court itself entered such a judgment conditioned upon the election of *remittitur* being exercised. The appellate court in the case cited said: "No part of the original judgment was left in existence after the judgment of this court upon the former appeal. The fact that another judgment might be rendered in the future by the trial court upon the exercise of a certain option by the plaintiff could not under any theory be construed as any affirmance, even in part. The sureties are only held according to the language of their bond, and that language does not cover this case. They never agreed to pay a judgment rendered in future in the trial court, but only the existing judgment, or some part thereof, in case of affirmance." That holding, too, goes much beyond the conclusions reached above in the instant case in the application of the *strictissimi juris* rule. Assuredly, the circumstance cited of the later judgment being ordered by the appellate court to be entered by the trial court, instead of its being entered by the appellate court itself, as in the instant case, does not distinguish the one case from the other. It is alike true in both cases that the later judgment is not the same, or for the same amount, as the judgment named in the terms of the bond, but another judgment, rendered in the future, conditioned to come into existence only in the event of the exercise of a certain option by the plaintiff. And of such a judgment, in the instant case, we must also say, that "it could not under any theory be construed as any affirmance" of the whole judgment, of the trial court. And that being true, it is plain that it is not embraced in the terms of the bond in suit. The difference between the first and the second judgments, both in the case cited and in the instant case, is more substantial

than the difference made by the circumstances of the second judgment being entered at a different time by the trial court in the cited case and at a different time by the appellate court in the instant case from the time of the entry of the original judgment. If the *strictissimi juris* rule excludes the judgment in question in the case cited from the obligation of the surety, *a fortiori* will such rule exclude the judgment in question in the instant case from the obligation of the surety which is set out in the terms of the bond in suit.

*Rothgerber* v. *Wonderly,* 66 Ill. 390, contains the same holding in substance as that of the case last above cited.

In *Heinlen* v. *Beans,* 71 Cal. 295, 12 Pac. 167, the obligation of the bond was to pay "if the judgment be affirmed." The appellate court reversed the judgment of the trial court, but permitted a *remittitur,* and remanded the cause to the court below with direction to enter judgment accordingly, which was done. The court, in its opinion, said: "Now, if this judgment was affirmed at all it was only affirmed in part, and the undertaking does not impose on the parties the obligation to pay on any such contingency, but only in case the judgment appealed from is affirmed. We construe this to mean affirmed as rendered by the court below. It does not mean affirmed in part." Such holding is directly in point as applied to the instant case. It is true that the court in that case says that such conclusion on its part "is strengthened" by the consideration that there was a provision of statute in that State under which there might be a stay of execution in case of an appeal from a judgment by the giving of a certain bond, which such statute provided should not only covenant to pay the amount of the judgment, but also "the part of the amount as to which judgment or order is affirmed, if affirmed only in part;" whereas the last quoted language was not contained in the appeal bond statute under which the obligation in that suit

was given. But the reasoning of the court is quite convincing, without the aid of such strengthening consideration.

And in *Galloway* v. *Yates, supra,* 10 Minn. 75 (Gil. 53), the undertaking of the bond was to "prosecute the appeal with effect" and to pay the judgment appealed from in case it "be affirmed or any part thereof be affirmed," the amount to be paid to be "the amount directed to be paid by the judgment or the part of such amount as to which the judgment shall be affirmed." And the appellate court, as stated in the opinion, reversed the judgment of the trial court "unless the plaintiff should within ten days remit the verdict as to all the defendants except one, and consent to take judgment against him alone, * * * in which event said order appealed from is affirmed." This was, in substance, precisely what was done by the appellate court in the instant case. The opinion says: "Now, all that was done by the Supreme Court was to affirm or rather modify an *order*, not a *judgment* in whole or in part. This was not, by the terms of the undertaking, the contingency upon the happening of which the appellants agreed to pay. There has been no breach upon their part." (Italics supplied.) From which again appears a strictness of construction of the terms of the obligation of the surety in the appeal bond exceeding that applied by the conclusion above reached in the instant case.

And again, in *Lang* v. *Pike,* 27 Ohio St. 498, the bond was given by two appellants on appeal from a judgment against them both conditioned to pay if the judgment was "affirmed." The judgment was affirmed *in toto* as to one of the appellants, but reversed as to the other. The court held that the surety was discharged. The court said: "To hold differently would be enlarging the term and changing the condition of the undertaking, thereby making by construction a new undertaking of the parties and holding Pike responsible for conditions not in his contract." Such and so strict is the rule applicable to the obligation of a surety.

By way of summary, therefore, it may be said that the record in the instant case does not raise the question whether the surety is released if the principal obligor has become insolvent pending the appeal, or if the enforceability of the later judgment by execution has been impaired by reason of the supersedeas and subsequent delay thereby occasioned. So that no perversion of justice is threatened on that score. The record before us raises only the question of the application of the terms of the bond aforesaid and the determination of the purely legal question of whether such terms, under the *strictissimi juris* rule, obligate the surety to pay the judgment which was entered by this (the appellate) court, which was not the judgment named in the bond, but a different judgment which at most can be said to be only the former judgment "affirmed in part."

For the foregoing reasons, I think the case should be reversed, and hence am constrained to dissent from the majority opinion.